UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRAVIS WILLIAMS and AMANDA WILLIAMS, husband and wife,<br><br>               Plaintiffs,<br><br>v.<br><br>MADISON COUNTY, IDAHO and the MADISON COUNTY SHERIFF'S DEPARTMENT, a political subdivision of Madison County, Idaho,<br><br>               Defendants. | Case No. 4:12-cv-00561-EJL-CWD<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 25)**<br><br>**ORDER RE: DEFENDANTS' MOTION TO STRIKE and PLAINTIFFS' MOTION TO SUPPLEMENT (Dkt. 35, 23)** |

## INTRODUCTION

The court has before it Defendants' Motion for Summary Judgment (Dkt. 25), as well as their motion to strike (Dkt. 32) and Plaintiffs' motion to supplement the record (Dkt. 35). The Court heard oral arguments on all pending motions on November 3, 2014. For the reasons explained below, the Court will recommend that Defendants' Motion for Summary Judgment be granted on Counts IV and VI; granted in part and denied in part on Counts I, II, III and V, as set forth in Plaintiffs' Second Amended Complaint. (Dkt. 23.) Because the Court did not need to consider the majority of the material or testimony

sought to be stricken or any of the material sought to be supplemented in arriving at its recommendation, the Court denies the remaining two motions without prejudice to the parties renewing their objections or supplementing the record before or at the time of trial.

## FACTS[1]

Plaintiffs Travis Williams and his wife, Amanda Williams, sued Madison County and the Madison County Sheriff's office alleging Madison County violated Travis Williams' substantive due process rights when his employment was terminated in an arbitrary and capricious manner. Travis Williams alleges also violation of his constitutional right to free speech. In counts IV - VI, Plaintiffs allege state law claims for wrongful termination in breach of a contract of employment, negligent infliction of emotional distress, and a whistleblower claim. Amanda Williams alleges she suffered from "mental anguish and a loss of companionship, society, and comfort" with her husband as a result of each cause of action, except for the whistleblower claim.

Travis Williams began working at the Madison County Sheriff's Department in 1995 as a reserve deputy. By 2006, Williams was promoted to the rank of Captain in the criminal division. On or about August 7, 2010, Madison County Sheriff's Deputy Nathan Kerbs was involved in an incident in Jefferson County, Idaho. Kerbs was off duty and

---

[1] The Court finds the following facts material and undisputed or, when disputed, taken in the light most favorable to the Williams, Plaintiffs and non-moving parties. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the non-moving party on motion for summary judgment).

had been drinking alcohol.[2] Kerbs' father was involved in an altercation which Kerbs did not witness, and law enforcement was called to the scene. Kerbs was interviewed by the investigating officers of the Rigby Police Department and he identified himself as a Madison County detective. The investigating officers apparently accused Kerbs of lying during the investigation to cover for his father. Kerbs was not charged with any unlawful conduct and was allowed to leave the scene of the incident after he was interviewed.

Travis Williams, as Kerbs' supervisor, was informed of the incident. Williams discussed the matter with Chief Deputy Ryan Kaufman, and Williams volunteered to gather information and prepare a preliminary report to Sheriff Klingler.[3] Williams compiled the information and wrote a memorandum on August 23, 2010, finding that Kerbs had not witnessed the altercation and had not lied to investigating officers, implying there was no malfeasance on the part of Kerbs. Williams recommended Kerbs be counseled about being a bar patron and when it is appropriate to identify himself as a police officer, because actions off duty represent the Madison County Sheriff's Office. Williams did not recommend any other discipline for Kerbs. Before submitting the report to Chief Deputy Kaufman and Sheriff Klingler, Williams showed a draft of his report to Kerbs.

---

[2] The facts surrounding the incident with Kerbs were previously found undisputed by the Court in *Kerbs v. Madison County*, Case No. 4:12-cv-178-EJL-CWD, upon Madison County's motion for summary judgment. *See* Mem. Dec. and Order, March 5, 2014 (Dkt. 25). It appears that the parties rely upon the same testimony and evidence here, given Travis Williams was asked to investigate the Kerbs incident.

[3] Sheriff Klingler has held the office of Sheriff for Madison County since 2001.

Deputy Kaufman and Sheriff Klingler did not agree with all of the conclusions in Williams' August 23, 2010 memorandum. On September 2, 2010, Williams received a Notice of Suspension with Pay Pending Investigation. The Notice indicated the basis for the discipline was violation of personnel policies, including conduct unbecoming an officer. On September 14, 2010, Williams received a Notice of Proposed Personnel Action – Termination from Sheriff Klingler, explaining that the memorandum Williams authored violated provisions of the 2006 Madison County Personnel Policy manual[4] and Sheriff's Office policy. Williams requested an appeal hearing, and one was held before Sheriff Klingler on September 29, 2010. Williams was present with his attorney and was allowed to present evidence.

On November 10, 2010, Williams received a written Notice of Decision Regarding Pending Personnel Action from Sheriff Klingler. The Notice indicated Williams would be disciplined for "preparing an inadequate report of the incident involving Detective Kerbs," for "failing to adequately act as a Captain," and for "causing disruption in the workforce by admitting [he] had talked to Deputy Kerbs prior to his submission of [his] report." It indicated the actions violated four provisions of the MCPP, including provisions regarding conduct adversely affecting the Office and engaging in behavior designed to create discord and lack of harmony at the office. Williams was given a reduction in rank from Captain to Detective, his rate of pay was reduced by $2.00 per hour to $21.67 per hour, and Williams was placed on probation for two years from

---

[4] In this case, the parties refer to the 2006 Madison County Personnel Policy Manual as the "MCPP."

the date of the Notice. The Notice further indicated that, "as a Probationary employee, you are considered to be an at-will employee, subject to termination of employment at the will of the Sheriff." Williams signed an acknowledgement of receipt of the Notice.

Because of the disciplinary action, Williams filed a notice of tort claim on April 4, 2011. In the Notice of Tort Claim, Williams asserted that Madison County failed to follow its own policies and procedures regarding investigation of a personnel action; improperly demoted Williams; disciplined Williams because of his perceived medical disability; failed to provide an impartial hearing; and denied Williams procedural due process.

On April 12, 2011, Williams received a Notice of Personnel Action – Reprimand and Notice of Last Chance," indicating he was subject to discipline for, among other things, allegedly violating evidence handling procedures and for failing to timely file reports. On May 9, 2011, Plaintiff received a "Notice of Suspension with Pay Pending Investigation" regarding allegations that he was working for Broulim's Fresh Foods while on duty for Madison County. After a tri-county investigation found Williams had not violated Madison County policy, he was returned to work on May 27, 2011.

On February 23, 2012, Williams' written performance evaluation (reviewed by Mike Courtney and approved by Dave Stoddard) indicated Williams met or exceeded 22 out of 25 specific job requirements, with the exception of a "marginal" review in the remaining three areas: following chain of command; productivity during times of low activity; and, displaying a positive attitude towards the job and others. The supervisor's comments indicated Williams "has taken steps to overcome some personal issues" and

that Williams' comments and goals stated on the evaluation "reflect well about his current attitude towards work accomplishing tasks and getting his work done to the best of his abilities."

On April 17, 2012, the Sheriff's Office held a staff meeting and training session regarding the "proper handling of evidence." All deputies signed a policy statement clarifying proper evidence handling procedures.

On May 30, 2012, Plaintiff was given a "Notice of Proposed Personnel Action – Termination and Notice of Administrative Suspension" from Sheriff Klingler. The May 30, 2012 Notice referenced the November 10, 2010, April 11, 2011, and May 4, 2011 Notices, and stated that "since the above-referenced incidents," Williams had engaged in several additional incidents violative of policy. These incidents included a chain of command violation; lack of professionalism; leaving his law enforcement vehicle unlocked with a loaded firearm in plain sight; violation of evidentiary rules as to the keeping, marking and storing of evidence; and, creating disharmony in the office. Based upon the outlined incidents, the Notice referenced fourteen alleged policy violations for which termination of employment was sought. The Notice indicated Williams could submit a written response, and had the right to an appeal hearing before Sheriff Klingler, which Williams could attend with counsel. Williams was placed on administrative suspension with pay until the matter was resolved. Williams requested an appeal hearing, and on June 6, 2012, Sheriff Klingler notified Williams he could appear for such a hearing.

A hearing was conducted on July 26, 2012. Williams appeared with counsel, presented evidence, and testified in person. Sheriff Klingler acted as the hearing officer in regard to Williams' termination. Sheriff Klingler had previously acted as a hearing officer during the September 2010 disciplinary proceedings. Sheriff Klingler stated he did not have any "personal or financial stake" in the decision to terminate Williams' employment, and that he did not hold any "personal animosity" toward Williams or harbor any bias against Williams.

Williams' employment was terminated by Madison County the day after the hearing on July 27, 2012, and Williams was provided with a "Notice of Decision – Personnel Action – Termination" by Sheriff Klingler, which described the Sheriff's findings. The Notice listed thirteen alleged policy violations. The Notice did not indicate Williams had any further right to appeal, and at the July 26, 2012 hearing, Williams understood it was the final hearing. Williams did not request a post-termination "name clearing hearing."

According to Sheriff Klingler, Williams' employment was terminated for the reasons set forth in the "Notice of Proposed Personnel Action – Termination." In Sheriff Klingler's view, he could no longer employ Williams, because he could not rely on Williams to comply with Sheriff's Office policy and protocol. Sheriff Klingler was of the opinion that he could not effectively and efficiently carry on the affairs of the Office of Sheriff with Williams as a Sheriff's Deputy. Williams, however, disputes the bases for the termination of his employment.

Williams testified that, following the termination of his employment, he suffered "just anxiety, occasional panic attack, I guess. . . . Insomnia." Williams has not seen a counselor as a result of his alleged emotional distress, and has not seen any other health care provider for emotional distress since November of 2010. However, he indicates he has suffered an "extreme amount of emotional distress" as a result of not being able to work in law enforcement, and because he no longer was employed, he was unable to afford additional treatment for medical care. Aff. of Williams ¶¶ 115, 117 (Dkt. 29-11 at 32).

Williams has been unable to obtain a position in law enforcement since his termination from employment with Madison County. He applied for law enforcement positions at the INL, City of St. Anthony, and Fremont County. The hiring policies of Bannock and Bonneville County state applicants are not eligible for hire if the applicant has ever been terminated from employment with a law enforcement agency. Williams therefore did not apply to any position within Bannock or Bonneville County.

The MCPP effective October 1, 2006,[5] expressly provides that it does not create a contract of employment. On the first page of the MCPP, it disclaims in all-caps:

> THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH MADISON COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BOARD AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITED BY THE CONTRACT.

---

[5] Neither party disputes that the 2006 policy manual is the operative manual applicable here.

In section IV(A) of the MCPP, the first paragraph states:

> *Except as otherwise provided in this paragraph*, employees of Madison County will not be suspended without pay, demoted with an accompanying change in pay, or discharged from their positions except for cause related to performance of their job duties or other violations of this policy. Cause shall be determined by the employee's supervisor/elected official and shall be communicated in writing to the employee when employee status is changed.

(emphasis added).

The MCPP further states that discharge for cause "shall be subject to the appeal procedure set forth in the personnel policy." Only part-time or casual employees are "not subject to guidelines" set forth in the MCPP. The appeal hearing procedure is set forth in section IV(C)(4) of the policy manual, which provides the employee with an opportunity to be heard before the department supervisor with an attorney present.

Williams did not sign a "contract of employment" with Madison County. But, he never signed a policy manual acknowledgement indicating he was an at-will employee. Sheriff Klingler testified he understood employees could be fired only "for cause" after the first year, and his standard form "Conditional Offer of Employment" explained that employees are employed at-will only during the first year of employment.[6]

Williams describes four instances when he was denied free speech. First, in May of 2011, Williams contends he spoke to a fellow county employee about Sheriff Klingler's inappropriate comment that: "if [he] wasn't the Sheriff, [he] would kick [that

---

[6] District Judge Lodge found this fact undisputed as well in *Kerbs*, Slip. Op. at 2. The Agreement new employees signed indicated the Sheriff can terminate their employment "without cause…within a year from my official employment date." (Dkt. 29-4 at 18.)

individual's] ass." Williams learned of the comment from another deputy. Second, Williams testified he was told by Madison County civil attorney Troy Evans he could not file a grievance against an elected official in Madison County, and that Sheriff Klingler told Williams he was not allowed to talk to the commissioners in regard to pending disciplinary matters.

The last two incidents concerned the upcoming election in 2012 for Sheriff. Williams testified that, in the spring of 2012, his wife posted on Facebook she was not going to vote for Sheriff Klingler in the 2012 primary election. Williams testified he asked his wife to remove the post, and he alleges the Facebook post was one reason for the termination of his employment. Williams also shared his sentiments that it was "time for a new sheriff" with an acquaintance during a high school basketball game in January or February of 2012. On or about May 12, 2012, Williams discussed the Facebook post with Sheriff Klingler, and Klingler apparently volunteered that he had heard about Williams' other comment at the basketball game.

Williams' whistleblower claim asserts that on April 18, 2012, May 11 or 12, 2012, and June 26, 2012, Williams reported to the Sheriff that "evidence was handled improperly" by Sgt. Courtney and Det. Virgin. Williams alleges that burlap sacks seized as part of a drug bust were not placed in the evidence locker and were instead left outside of Sgt. Courtney's door.

Amanda Williams was never employed by Madison County. Although there is no separate count setting forth Amanda Williams' loss of consortium claim, she pleads that she suffered from "mental anguish and a loss of companionship, society and comfort with

Travis Williams" as part of Counts I, II, III, IV, and V of the Second Amended Complaint.

## ANALYSIS

**1.    Evidentiary Motions**

### A.    *Motion by Defendants to Strike Certain Portions of the Affidavit of Travis Williams*

The Court has reviewed the motion to strike portions of the Affidavit of Travis Williams. (Dkt. 29-11.) With the exception of the facts relied upon to support Williams' First Amendment retaliation claim, (paragraphs 52-54 of Williams' affidavit), the Court finds the remaining contested portions of the affidavit are not relevant to resolving the motion for summary judgment. While the contested statements are speculative and based upon hearsay, the Court has determined it need not consider the contested portions of the affidavit of Travis Williams in resolving the pending motion for summary judgment. With the exception of the motion to strike paragraphs 52-54 of Williams' affidavit, which is denied as explained in Section 4(C) below, the remainder of the motion to strike will be denied as moot.

### B.    *Motion to Supplement the Record*

Plaintiffs seek to introduce the transcript of a County Commissioners meeting held on July 7, 2014, during which statements were made by certain county commissioners and Sheriff Klingler that the Madison County personnel policies currently in place would be revised, and "change significantly" to an "at will" policy. The County objects to

introduction of the transcript on the grounds that the documents and videos offered by Plaintiffs have not been properly authenticated.

The proffered evidence appears to be an admission of a party opponent, made after the facts giving rise to this lawsuit. But, the Court need not resolve the objection at this juncture. The Court has determined the evidence is unnecessary to resolve the pending motion for summary judgment. Although the motion to supplement will be denied as moot, the Court's ruling does not foreclose the opportunity for Plaintiffs to offer the evidence at trial, and for the County to file a motion in limine or otherwise object at the time of trial.[7]

## 2. Defendant Madison County Sheriff's Department

Plaintiffs' Second Amended Complaint includes Madison County Sheriff's Department as a named Defendant. Defendants claim that the Sheriff's Department is not a separate entity from Madison County, and the Sheriff's Department should either be dismissed or treated as a fictitious entity. Plaintiffs did not contest this argument. Further, the Court's holding in *Kerbs v. Madison County*, No. 4:12-cv-00178-EJL (D. Idaho Mar. 5, 2014) addressed the identical issue presented here. The Court held the following:

> [T]here is no Idaho law that allows a plaintiff to sue anything other than a "political subdivision" for a tort and the sheriff's department is not a "political subdivision" as that term is defined under Idaho law. *See* Idaho

---

[7] The Court finds the County's position rests on shaky ground. The admission by defense counsel's client during the July 7, 2014 Madison County Commissioners' meeting that the current personnel policy would <u>change</u> to an at-will policy directly contradicts the County's argument that the MCPP supports at-will employment. However, as will be explained, the Court can arrive at that conclusion without considering the purportedly unauthenticated statements by certain County Commissioners and other county officials present at the meeting.

Code § 6-902. Clearly, Madison County can be sued or sue. *See* Idaho Code § 31-604. Therefore, the Court will dismiss as an improper party the Madison County Sheriff's Department or Office and allow Plaintiffs to proceed only against Madison County.

The Court sees no reason to depart from District Judge Lodge's determination in *Kerbs* and will recommend dismissal of the Madison County Sheriff's Department as a named defendant, a point Plaintiffs conceded during oral argument.[8]

## 3.  Summary Judgment Standard

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out

---

[8] The Court wonders why, in light of *Kerbs*, Plaintiffs did not file a notice to that effect.

the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## 4. Constitutional Claims Brought Under 42 U.S.C. § 1983 Against Madison County

To state a claim against a local government entity under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,'[9] but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v.*

---

[9] Plaintiffs' complaint incorrectly asserts that Defendants "also violated Plaintiff's rights" pursuant to 42 U.S.C. § 1983.

*Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

In a Section 1983 claim, a municipality can be liable when a constitutional deprivation was directly caused by a municipal policy, statement, ordinance, regulation, decision, or custom officially adopted and promulgated by that body's officers. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). The policies Travis Williams allegedly violated and which led to the termination of his employment were official policies of the Madison County Sheriff's Office adopted by Madison County and enforced by its agents, including Sheriff Klingler, the final policy maker for the Sheriff's Office. The enforcement of these policies directly caused the potential constitutional deprivation of rights suffered by Travis Williams. Therefore, liability is imputed to Madison County from Sheriff Klingler's actions while acting in in his official capacity. *See Hollist v. Madison County*, No. 4:13-cv-139-BLW, 2014 WL 5089941 *8 (D. Idaho Oct. 9, 2014).

### A.    *Amanda Williams*

Amanda Williams asserts a claim for emotional distress as to each of Travis Williams' constitutional claims under Section 1983. In *Kerbs*, Judge Lodge held that Mrs. Kerbs, who asserted "mental anguish and a loss of companionship, society and comfort" with her husband as a result of each constitutional cause of action, lacked standing to make a Section 1983 claim based upon her status as Mr. Kerbs' wife. Judge Lodge noted Mrs. Kerbs had not alleged a state actor deprived her of a constitutional right. *Kerbs*, Slip op. at 12.

Here, Amanda Williams similarly has not asserted that any state actor deprived her of a constitutional right. Plaintiffs have not provided the Court with a persuasive reason or authority to reject Judge Lodge's reasoning in *Kerbs.* The Court therefore will recommend that Amanda Williams' Section 1983 claims embodied in Counts I, II, and III be dismissed.

## B. *Due Process Claim Under the Fourteenth Amendment*

Williams alleges he has a protected property interest in continued employment, and Madison County violated both his procedural due process rights and his substantive due process rights. Procedurally, Williams alleges Sheriff Klingler's assumption of duties as a hearing officer constituted a failure to provide an impartial decision maker, especially given the lack of any post-termination procedure with an impartial decision maker. Substantively, Williams alleges that the disciplinary decisions were made without just cause, and effectively blacklisted Williams from a career in law enforcement. Both allegations will be discussed in turn.

### (1) *Procedural Due Process Claims*

First, Williams argues he has a property interest in continued employment based upon the provisions in the MCPP, which could be changed only by written agreement of the Board of Commissioners, and indicated he could be disciplined only for cause. Williams contends Sheriff Klingler's unilateral attempt to change Williams' employment status from one "for cause" to a probationary "at-will" status was ineffective, because neither Williams nor the Board agreed upon the change. Williams relies upon this Court's holding in *Brown v. Valley County*, No. 1:12-cv-057-CWD, 2013 WL 1453368 (D. Idaho

Apr. 9, 2013), that the Valley County Policy Manual containing identical language created a protected property interest in continued employment. Madison County argues *Brown* was decided incorrectly, and misinterpreted the Ninth Circuit's holding in *Lawson v. Umatilla Co.*, 139 F.3d 690, 691 (9th Cir. 1998).

The Court previously considered the implications of the 2006 MCPP upon Madison County employees in two recent decisions: *Hollist v. Madison County*, No. 4:13-cv-139-BLW, 2014 WL 5089941 (D. Idaho Oct. 9, 2014), and *Kerbs v. Madison County*, No. 4:12-cv-178-EJL-CWD, 2014 WL 4388248 (D. Idaho Mar. 5, 2014). Both matters involved Madison County Sheriff's Office employees and the 2006 MCPP.[10] And in both matters, the Court specifically found Sheriff Klingler understood that the employment of Sheriff's Office employees could be terminated only for cause, after completing the one year introductory employment period.[11] Madison County overlooks the factual finding involving Sheriff Klingler in both cases, which is binding here.

Second, Madison County's attempt to discredit the holding in *Brown* by relying upon *Lawson* is misplaced. The Court in *Hollist* discussed this Court's interpretation of

---

[10] At the hearing, Defendant's counsel confirmed that the Court reviewed the 2006 MCPP in both *Hollist* and *Kerbs*.

[11] In *Kerbs*, the Court found it undisputed that Sheriff Klingler understood employees could be terminated only for cause under the terms of the 2006 MCPP. And in *Hollist*, the Court similarly found that Sheriff Klingler believed that, based upon the policy manual, a supervisor could terminate an employee only for cause. 2014 WL 5089941 *7.

*Lawson* in a series of cases,[12] and held that the 2006 MCPP—the same policy manual upon which Williams relies—created a reasonable expectation in continued employment after the expiration of the introductory period. 2014 WL 5089941 *8. *Brown* distinguished *Lawson* on its facts, explaining that Brown never signed an "emphatic at-will acknowledgement," and Idaho does not statutorily codify the at-will status of its county employees like in *Lawson*. Instead, Idaho has a presumption that all employees are at-will, which presumption may be rebutted by the terms of an express or implied policy manual, like the MCPP.

Here, similar to the plaintiff in *Brown*, Williams did not sign an acknowledgment that his status would remain at-will following the one year introductory period, nor did he concede his status as an at-will employee. Sheriff Klingler understood the MCPP required cause before a full-time employee could be terminated. And, despite Williams' signature on the November 10, 2010 Notice indicating Williams' status would be changed to probationary, "at-will" status,[13] Sheriff Klingler's later actions belie that belief. Sheriff Klingler continued to provide notice and an opportunity to be heard according to the terms of the MCPP, which would lead a reasonable person to conclude he retained an expectation in continued employment. Further, although Williams admits acknowledging receipt of the Notice, he does not concede that the statement in the Notice

---

[12] Those cases are *Harms v. Jeffries*, No. 4:11-cv-111-EJL-CWD, 2013 WL 791452 (D. Idaho Mar. 4, 2013); *Sommer v. Elmore County*, No. 1:11-cv-291-REB, 2013 WL 5274223 (D. Idaho Sept. 18, 2013); *Brown*, 2013 WL 1453368 (D. Idaho Apr. 9, 2013), and *Kerbs*, 2014 WL 4388248 (D. Idaho Sept. 4, 2014).

[13] If Sheriff Klingler purportedly changed Williams' status to "at-will," it logically follows Sheriff Klingler understood Williams' employment status was not at-will prior to November of 2010.

changed his employment status. Finally, the MCPP states that only employees during the "introductory period" are considered probationary employees terminable at will. Therefore, it is at least disputed whether the Notice had any effect upon the terms of the MCPP, which indicated an introductory period was for one year only.

But nowhere in the 2006 MCPP does it state that Sheriff Klingler had the ability to override the terms of the policy manual. On the first page of the manual, it emphatically states that changes to the policy manual could be made only by the governing Board, and that the policy statements set forth therein "cannot be superseded by any other official's commitment, without the express written agreement of the Board." (Dkt. 29-12 at 10.) While probation is listed as a form of discipline, (*Id.* at 15), nowhere in the 2006 MCPP is probation defined, nor does probation appear to include the ability to change a full-time employee to "at-will" status. Rather, the paragraph governing employment status indicates discharge may occur only "for cause." (*Id.* at 12.) Further, discharge for cause is expressly subject to the "appeal procedure set forth in this personnel policy," directly contradicting the County's arguments that the unilateral act by Sheriff Klingler in the November 10, 2010 Notice effectively changed Williams' employment status to "at-will."

The Court's holding in *Hollist*, which relies upon *Brown*, controls here. The 2006 MCPP created a reasonable expectation in continued employment by its terms, and therefore Williams possessed a constitutionally protected property interest. Further, the policies which Williams allegedly violated were "official policies of the Madison County Sheriff's Office adopted by Madison County and enforced by its agents, including Sheriff

Klingler, the final policy maker for the Sheriff's Office. … The enforcement of [the policies] directly caused the potential constitutional deprivation of" Williams' interests. *Hollist*, 2014 WL 5089941 at *8.[14]

Next, the Court finds a genuine dispute of material fact exists regarding Williams' claim that he did not receive a hearing by a non-biased decision maker. The Court in *Hollist* discussed the same issue. There, the Court explained that due process requires that:

> [A] person be given notice of her impending termination and a pretermination hearing. It is well-settled that the Due Process Clause requires ... 'a fair trial in a fair tribunal.' However, an impartial decision maker at a pre-termination hearing does not necessarily violate due process as long as the decision maker at a post-termination hearing is impartial.
>
> Because Madison County does not offer post-termination hearings, the burden was on Madison County to conduct Hollist's pretermination hearing in a way that would afford her sufficient due process, which necessarily included providing a non-biased decision maker. To show unconstitutional bias, a plaintiff must overcome a presumption of honesty and integrity in those serving as adjudicators. The plaintiff must show the decision maker 'has prejudged, or reasonably appears to have prejudged, an issue.'

*Hollist*, 2014 WL 5089941 at *12-13 (internal citations omitted).

The Court found Hollist raised a triable issue of fact whether her due process rights were violated, because Sheriff Klingler served as the decisionmaker to her appeal and he expressed verbally to Hollist that he believed she had violated department policy.

---

[14] At the hearing, the County argued *Hollist* was distinguishable, because Hollist signed a conditional offer and relied upon statements made by Sheriff Klingler. The Court does not find the County's arguments persuasive. Williams' terms of employment were governed by the 2006 MCPP and he did not sign an acknowledgement when hired that his employment was "at-will." The facts are substantially the same as in *Brown*.

*Id.* at 13. The Court found also that Sheriff Klingler articulated his determination to terminate Hollist's employment was "cut and dry." *Id.*[15]

Here, although Sheriff Klingler did not emphatically state Williams' employment would be terminated in advance of the hearing, construing all inferences in favor of Williams, as it must, the Court concludes a reasonable juror could infer from Sheriff Klingler's actions that he prejudged the issues. First, Sheriff Klingler's statement that he held no bias or animosity against Williams does not necessarily satisfy the above standard. While Sheriff Klingler may not have directed animosity toward Williams personally, his statement does not address whether he prejudged the *issues* constituting Williams' termination from employment. Second, the sheer number of disciplinary violations amounting to thirteen alleged policy violations could support an inference that Sheriff Klingler was looking for reasons to terminate Williams' employment. And, the July 27, 2012 termination decision follows a favorable employment evaluation of Williams in February of 2012 from a different supervisor. Moreover, Sheriff Klingler stated he could no longer rely upon Williams, suggesting he had prejudged the issues. Finally, Sheriff Klingler filed a previous notice of action just days after Williams submitted a notice of tort claim in April of 2012.

---

[15] Although Hollist filed a motion for reconsideration or clarification of the Court's memorandum decision (*see* Motion, Dkt. No. 39 at 6, Case No. 4:13-cv-139-BLW), it does not appear that any later correction would change the Court's due process analysis. The motion for clarification is based upon the grounds that the Court may not have reviewed the operative complaint, which included a claim for violation of due process. The original complaint did not. The Court commented that, "although Hollist did not allege a specific due process claim in her original complaint, both parties have thoroughly addressed the issue in their briefing." Thus, any change to the opinion would address the amended complaint's *inclusion* of a due process claim.

There are sufficient facts from which a reasonable juror could find in favor of

Williams. Therefore, the Court will recommend that summary judgment be denied as to

Williams' procedural due process claim.

### (2) *Substantive Due Process Claims*

According to Williams, his termination from employment should be viewed as a

government blacklist. Because of the nature of the allegations levied at Williams as

support for his termination from employment, Williams contends he is prevented from

ever working in law enforcement again.[16]

The United States Court of Appeals for the Ninth Circuit has not foreclosed

substantive due process claims based upon certain extreme cases, such as a blacklist,

stating:

> We decline to hold that there is no substantive due process claim for a
> public employer's violations of occupational liberty. Rather, we limit the
> claim to extreme cases, such as a "government blacklist, which when
> circulated or otherwise publicized to prospective employers effectively
> excludes the blacklisted individual from his occupation, much as if the
> government had yanked the license of an individual in an occupation that
> requires licensure." *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir.
> 1997). Such a governmental act would threaten the same right as a
> legislative action that effectively banned a person from a profession, and
> thus calls for the same level of constitutional protection.

*Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 997-98 (9th Cir. 2007).

"An individual has a liberty interest in employment protected by the Due Process

Clause if the dismissal is 'for reasons that might seriously damage his standing in the

---

[16] Williams was accused of mishandling evidence, including the failure to return money to the evidence locker.

community,' ... or if the dismissal effectively precludes future work in the individual's chosen profession...." *Kerbs*, 2014 WL 869472 at *6 (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987)). One deprived of such a liberty interest must show "1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) the charge is made in connection with termination of employment." *Matthews v. Harney County Or., School Dist. No. 4*, 819 F.3d 889, 892 (9th Cir. 1987). Here, Williams contests the charges that led to the termination of his employment, satisfying factors one and three. [17] At issue is the public disclosure requirement.

Neither party adequately addressed this issue in their briefs. The County failed to articulate any argument save for its contention that Williams' employment was at-will under the terms of the MCPP, and therefore he had no protected liberty interest in continued employment. Madison County focused instead upon its claim that *Brown* was wrongly decided and should not apply here, an argument the Court has rejected. Williams argues he must disclose the reasons for his termination on applications for law enforcement positions. But Williams failed to address the relevant authority in the Ninth Circuit regarding what constitutes public disclosure. Accordingly, the Court undertook an analysis to determine whether Williams' theory that his honesty with prospective employers satisfies the public disclosure requirement and, consequently, his prima facie

---

[17] Although *Kerbs* is this Court's most recent case regarding public employee blacklisting, its facts are distinguishable. Kerbs did not contest the accuracy of the behavior deemed in violation of written policy; there was no evidence of public disclosure of either the personnel proceedings or of Kerbs' resignation; and Kerbs' employment had not been terminated. *Kerbs*, 2014 WL 869472 at *6. Further, there were facts indicating Kerbs had talked to others about his situation. *Id.* The Court found those facts determinative upon summary judgment.

case, considering the County moved for summary judgment on all claims.[18] *See*

*Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013) (court may not grant

summary judgment by default).

Williams relies upon this Court's holding in *Dixon v. City of Coeur d'Alene*, Case

No. 2:10-cv-0078-LMB, slip. op. at 8. (D. Idaho Apr. 28, 2011),[19] which determined

upon summary judgment that production of an actual list was not necessary. Dixon was a

lieutenant in the Coeur d'Alene Police Department. After the conclusion of an internal

investigation into allegations of falsification of timekeeping records, Dixon was demoted.

Dixon argued the demotion amounted to a constructive discharge, and that his resulting

termination should be viewed as a government blacklist. He proffered the testimony of

three experts, all former police administrators, who were of the opinion that the discipline

was arbitrary and Dixon was virtually barred from gaining employment in law

---

[18] Madison County cited one lone fact---that Williams did not request a name-clearing hearing. Due process requires one in the context of a claim for deprivation of a liberty interest in violation of due process. *Cox v. Roskelley*, 359 F.3d 1105 (9th Cir. 2004). But the Court in *Hollist* specifically found that Madison County "does not offer post-termination hearings," and consequently, "the burden was on Madison County to conduct Hollist's pretermination hearing in a way that would afford her sufficient due process, which necessarily included providing a non-biased decision maker." *Hollist*, 2014 WL 5089941 at *13. Here, the Court has determined that the hearing Williams was afforded, presided over by Sheriff Klingler, raised a genuine dispute of material fact regarding Williams' claim of a biased decision maker. The fact Williams did not request a name-clearing hearing post-termination is of no moment.

[19] After denial of the motion for summary judgment, *Dixon* was tried before a jury, which returned a verdict on October 26, 2011, finding Dixon was constructively discharged from employment by the City of Coeur d'Alene. As part of its verdict, the jury found Dixon had "become permanently foreclosed from pursuing any occupation in law enforcement because of" Defendant's actions. Case No. 2:10-cv-0078-LMB (Dkt. 130.) The jury returned a verdict of just under four million dollars, which was later reduced by remittitur to $3,238,899.00. The City appealed. The Ninth Circuit upheld the jury's verdict, finding the district court did not abuse its discretion in declining to admit polygraph evidence, and declining to reach any of the other issues advanced by the defendants on appeal. *Dixon v. City of Coeur d'Alene*, 547 Fed. Appx. 817 (9th Cir. 2013).

enforcement, because if he was honest with potential employers, he would be unable to obtain employment as a police officer.[20]

The defendants argued that, absent an actual list or some other affirmative action by the City, Dixon could not claim he was blacklisted. But the Court disagreed, finding for purposes of summary judgment that an actual list or dissemination of information by the City was not required under *Engquist* to survive summary judgment. *Id.*, Slip op. at 8. In making its finding, the Court relied upon the expert testimony presented, and concluded it was for a jury to decide whether the demotion amounted to a constructive discharge. *Id.*, Slip op. at 9.

But *Dixon* was decided before *Cox v. Roskelley*, 359 F.3d 1105 (9th Cir. 2004), which resolved the issue of what constitutes publication in the absence of official or intentional employer dissemination of damaging information contained in an employee's personnel file. Prior to *Cox*, the court in *Mustafa v. Clark County School District*, 157 F.3d 1169 (9th Cir. 1998), declined to decide whether, for due process protections to be triggered, the charges must be made public by the employer itself or whether the charges must be made public in an official or intentional manner. 157 F.3d at 1179 n.10. The court noted that the issue remained undecided in the Ninth Circuit, and that a split of authority had emerged among other circuits considering the issue. *Id.*

---

[20] The experts offering opinions in *Dixon* were David Scates, Pierce Clegg, and Willis Brownlee. Although Williams does not offer similar expert testimony, copies of the affidavits of Scates, Clegg, and Brownlee submitted in the *Dixon* case are in the record here. Aff. of Casperson Ex. H (Dkt. 29-10.)

The second precursor to *Cox* was *Llamas v. Butte Community College Dist.*, 238 F.3d 1123 (9th Cir. 2001). In *Llamas*, as in this case, the plaintiff argued that his truthful response to law enforcement application questions regarding his discharge from employment[21] was sufficient to satisfy the public disclosure requirement of a deprivation of liberty interest under the Due Process Clause. But, in *Llamas*, the employer had purged the plaintiff's personnel file to remove the reasons for his termination from employment. The court held that, under such circumstances, the plaintiff's self-publication on law enforcement applications regarding his discharge from prior employment did not implicate the Due Process Clause absent continuing maintenance of the stigmatizing information in the personnel file. *Llamas*, 238 F.3d at 1130-31.

In *Cox*, the critical distinction from *Mustafa* and *Llamas* was the maintenance of the stigmatizing information in the plaintiff's personnel file, coupled with the Washington public records law, which mandated disclosure upon request. 359 F.3d at 1110. Resolving the issue, the court held that, absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication sufficient to trigger a liberty interest under the Fourteenth Amendment when the governing state law classifies an employee's personnel file as a public record. *Id.* at 1112.

Turning to Idaho's public records law, Idaho Code § 9-340C(1) explicitly exempts from public disclosure "all personnel records of a current or former public official other

---

[21] The plaintiff in *Llamas* was not a law enforcement officer. He had been employed as a part-time on-call custodian for the publicly funded community college, and was discharged. The plaintiff later wanted to become a law enforcement officer.

than the public official's public service or employment history, classification, pay grade an step, longevity, gross salary and salary history, status, workplace, and employing agency." All other information, including grievances and performance evaluations, may not be disclosed absent an employee's written consent. *Id.* The protection afforded to Idaho public employees by the public records law and the holding in *Llamas* would seem to foreclose Williams' claim here.

But, the court in *Llamas* distinguished cases involving law enforcement officers. 238 F.3d at 1130. Llamas, who had not been discharged from a law enforcement career but who was pursuing a career in law enforcement, argued that persons pursuing law enforcement careers are not required to make the same showing of public disclosure because the application process requires confidentiality waivers and extensive background investigations. The court distinguished cases involving the termination of employment of police officers for alleged misconduct and the maintenance of stigmatizing information in their personnel files, on the grounds that the court must "realistically assume that potential employers in the public law enforcement field would investigate" the officer's background and discover the reasons for termination. *Llamas*, 238 F.3d at 1130 (citing *Lubey v. City and County of San Francisco*, 98 Cal. App.3d 340, 347 (1979) and quoting *Murden v. County of Sacramento*, 160 Cal. App.3d 302, 309 (1984)). The court declined, however, to create an enhanced due process right for someone like Llamas, who was employed in another field when he lost his job but later sought a career in law enforcement. *Llamas*, 238 F.3d at 1130.

Thus, it appears the court left the door open for those in law enforcement seeking such an enhanced protection. Given the persuasive authority from within this Circuit (*Lubey* and *Murden*) and elsewhere, the holding in *Dixon* may well survive the limitation imposed by *Cox. See Sciolino v. City of Newport News, Virginia*, 480 F.3d 642, 650 (4th Cir. 2007) (probationary police officer met publication requirement by showing that he intended to apply to an employer that had a practice of requesting personnel files from any former employer, and that the former employer would comply with that request).

Despite the lack of evidence before the Court that Madison County took any proactive steps to publicize Williams' disciplinary proceedings or the reasons for the termination of his employment, Williams contends that, to apply for a job in law enforcement, he must disclose his termination, the reasons for it, and agree to release everything in his personnel file connected with his termination. Here, Williams proffers his own testimony regarding his inability to obtain employment in law enforcement, and the hiring criteria used by Bonneville and Bannock County for such positions. Given the nature and numerosity of the charges, Williams contends it will be impossible to find a position in his chosen profession, and public disclosure of the nature of the discipline (not just the fact of termination from employment) is inevitable in his case.

With this in mind, and drawing all inferences in favor of Williams, a reasonable juror could find Madison County's actions attributable to Williams' inability to continue

his chosen career with another position in law enforcement.[22] The Court therefore will recommend that summary judgment be denied on this claim.

### C.    *Free Speech Claim Under the First Amendment*

To state a claim against an employer for violation of the First Amendment, Williams must show: (1) that he engaged in protected speech; (2) that the employer took "adverse employment action;" and (3) that his speech was a "substantial or motivating" factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

For the speech to be protected at step one, the Court must determine: (1) whether the speech at issue "'touch[ed] on a matter of public concern;'" and if so: (2) whether "'the interests of the [employee], as a citizen, in commenting upon matters of public concern [outweighed] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees;'" and (3) whether the employee spoke as a public employee or instead as a private citizen. *Posey v. Lake Pend Oreille School Dist*. No. 84, 546 F.3d 1121, 1127 (9th Cir. 2008). Once the employee establishes the first three elements, the burden shifts—the government can escape liability by showing that it would have taken the same action even in the absence of the protected speech. *Keyser v. Sacramento City Unified School Dist*., 265 F.3d 741, 750 (9th Cir. 2001).

---

[22] While there is no expert testimony tailored to support Williams' claim here, three experts in Dixon held the opinion that, upon similar facts, Dixon could never be gainfully employed in law enforcement. The Court does not decide here whether expert testimony specific to Williams' claims is required, as the issue was not presented.

An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968). "[S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)). On the other hand, speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *Id.* The determination of whether an employee's speech deals with an issue of public concern is made with reference to "'the content, form, and context'" of the speech. *Allen v. Scribner*, 812 F.2d 426, 430 (9th Cir. 1987) (quoting C*onnick v. Myers*, 461 U.S. 138, 147 (1983)).

The third element for establishing protected speech requires determination of whether the employee spoke in his capacity as an employee or a citizen. If the employee's speech constitutes "work product" that "owes its existence to [an employee]'s professional responsibilities," the speech falls within an employee's job responsibilities and thus outside of the sphere of First Amendment protection. *Posey*, 546 F.3d at 1127. The determination whether the speech was spoken as a public employee or a private citizen is a mixed question of fact and law. *Id.* at 1129.

When a government employee exercises his protected right of free expression, the government cannot use the employment relationship as a means to retaliate for that

expression. *Coszalter*, 320 F.3d at 974. The employee must show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions. *Coszalter*, 320 F.3d at 977. There are three ways a plaintiff can show that retaliation was a substantial or motivating factor behind an employer's adverse employment action. *Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741 (9th Cir.2001). First, a plaintiff can introduce evidence regarding the "'proximity in time between the protected action and the allegedly retaliatory employment decision'" from which a "'jury logically could infer [that the plaintiff] was terminated in retaliation for his speech.'" *Id*. at 751 (quoting *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir.1988)). Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others." *Id*. Or, third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pre-textual." *Id*. at 752.

To elaborate, Williams alleges four instances of protected speech. First, in May of 2011, Williams raised concerns to a fellow county employee that Sheriff Klingler made a comment while in public that, "if [he] wasn't the Sheriff, [he] would kick [that individual's] ass." Williams learned of the comment through Chief Deputy Kaufman. The second incident occurred in May of 2011 as well, when Williams alleges he had a conversation with a Commissioner while shopping in the grocery store. Williams apparently raised the fact that the County previously had a due process hearing policy before a neutral hearing board, and Williams allegedly expressed his concern about the

constitutionality of the County's current policy. Williams contends he was subject to discipline by Madison County for both comments.

Both comments were mentioned in the various notices of discipline issued to Williams by Sheriff Klingler. The April 12, 2011 Notice of Personnel Action indicated Williams was being disciplined for "perpetuating a rumor" regarding Sheriff Klingler about an alleged verbal altercation, and that Williams' comments about them were improper. Aff. of Williams Ex. H (Dkt. 29-12 at 58). The May 30, 2012 Notice of Proposed Personnel Action indicated that one of the reasons for discipline included Williams' conversation with one of the commissioners regarding requesting a hearing involving Sheriff's Office matters. *Id*. Ex. O (Dkt. 29-13 at 41).

Having made their way into disciplinary action notices, both comments received negative employer feedback and constituted one of the grounds for the disciplinary action against Williams. Neither party contests the other components of a First Amendment claim. The Court therefore will recommend that Williams be permitted to pursue his free speech claim for the first two comments.

The remaining two allegations concern a comment Williams shared with an acquaintance, Ben Harris, during a high school basketball game in January or February of 2012. Williams made the comment: "Maybe it is time for a new sheriff," referring to the upcoming election for sheriff. Williams' wife, Amanda, also posted on her Facebook page that she would not be voting for Sheriff Klingler in the upcoming election. Apparently, both comments made their way back to Sheriff Klingler, who had a conversation with Williams about the comments on May 12, 2012. On May 30, 2012,

Williams received a notice of proposed personnel action, listing fourteen policy violations. Williams characterizes these statements as political speech involving the upcoming election for sheriff. Regarding his wife's comments, Williams asserts a claim for retaliation based upon his association with his wife. Madison County raised objections to this testimony in its motion to strike on the basis of hearsay.

In *Brown v. City of Caldwell*, 2012 WL 892232 *9-10 (D. Idaho Mar. 14, 2012), the Court found, based upon corroborating evidence, that the Fire Chief knew of employee Brown's support of his political rival, based upon the testimony of others. Shortly after the elections, Brown's employment was terminated. The Court found those two facts—known public expression corroborated by others and temporal proximity— raised an inference of retaliation for protected political speech. *Id.*

Here, Williams asserts that Sheriff Klingler knew of the protected speech, and talked to Williams about the derogatory political statements on May 12, 2012. His testimony is not hearsay, because Williams testified to what Sheriff Klingler told him, constituting an admission of a party opponent. Fed. R. Evid. 801(d)(2). Shortly thereafter, on May 30, 2012, Williams received a notice of intent to terminate his employment. One of the reasons for termination was engaging in behavior "designed to create discord." Based upon the holding in *Brown*, the evidence creates a material question of fact about whether Williams' lack of support for Sheriff Klingler in the upcoming election was a substantial or motivating factor in the termination of Williams' employment. The Court therefore will recommend that Williams be permitted to pursue his free speech claim for the second two comments.

## 5. State Law Claims

### A. *Wrongful Termination*

Williams' wrongful termination claim is premised upon alleged breach of his employment agreement because the county terminated Williams' employment without good cause. Williams argues that the same facts the Court must evaluate to determine whether Williams had a property interest in continued employment supports Williams' claim that he had a contract for employment, and was therefore not an at-will employee. Madison County argues that, under *Sommer*, 2013 WL 5274223, Williams cannot have a contract based claim because of the disclaimer language on page one of the MCPP.

The Court in *Hollist* expressly found that the language in the 2006 MCPP stating: "This personnel policy is not a contract. No contract of employment will be valid unless it is signed in accordance with proper procedures"— negates any intention of Madison County that the MCPP become part of Hollist's employment contract. 2014 WL 5089941 at *5. The Court "therefore finds that Hollist's employment with Madison County was not contractual." *Id.*

Here, the same Policy Manual containing identical language governed the terms and conditions of Williams' employment. The MCPP expressly disclaims the existence of a contract of employment. Based upon the holding in *Hollist*, Williams cannot maintain a wrongful termination claim based upon breach of contract.[23]

---

[23] *Perry v. Sindermann*, 408 U.S. 593, 599 (1972), held that the lack of a formal contract, while relevant to a procedural due process claim, was not dispositive of the claim. In *Perry*, the Supreme Court explained, based upon the holding in *Board of Regents v. Roth*, 408 U.S. 564 (1972), that a plaintiff could show he was deprived of a constitutional property interest in continued employment despite the lack of a (Continued)

Because Amanda Williams' claim for damages for "mental anguish and loss of companionship" embodied within County IV for wrongful termination is parasitic to the breach of contract claim, her claim fails as well.

Accordingly, the Court will recommend that summary judgment on Count IV be granted.

**B.**   ***Negligent Infliction of Emotional Distress***

Negligent inflicition of emotional distress is simply a category of the tort of negligence, requiring the elements of a common law negligence action. *See Nation v. State Dep't of Correction*, 158 P.3d 953, 965–66 (Idaho 2007); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 804 P.2d 900, 904–06 (Idaho 1991); *Brown v. Matthews Mortuary, Inc.*, 801 P.2d 37, 44 (Idaho 1990). These elements are: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage. *Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct. App. 2009) (citing *Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995)).[24] In addition to these elements, for a claim of negligent inflicition of emotional distress to

---

formal contract. The Court in *Brown*, citing *Sommer v. Elmore County*, 2012 WL 4523449 (D. Idaho Sept. 30, 2012) and *Perry*, held the lack of an express contract does not determine the outcome of a plaintiff's due process claim. 2013 WL 1453368 at *8.

[24] Because of the Court's ruling on William's constitutional claim, the duty component of Williams' prima facie case is satisfied. The parties did not address this issue in their briefs, however.

survive, there must be some physical manifestation of the plaintiff's emotional injury. *Black Canyon Racquetball Club, Inc*., 804 P.2d. at 906.

### (1) *Travis Williams*

Madison County argues Williams has not alleged any physical manifestations of emotional distress, and he cannot prove his claim without expert testimony. Williams argues, however, that his testimony about the physical effects he suffered resulting from his job loss, which included nausea, insomnia, anxiety, and other physical symptoms, is sufficient proof, and that expert testimony is unnecessary. The Court agrees.

In *Czaplicki v. Gooding Joint School Dist. No. 231*, 775 P.2d 640, 646 (Idaho 1989), the court discussed the physical injury component of a negligent infliction of emotional distress claim. There, the plaintiffs alleged emotional injuries manifesting themselves in physical symptoms such as headaches, suicidal thoughts, sleep disorders, and loss of appetite. The court held that genuine issues of material fact existed based upon the plaintiffs' testimony regarding their claims for negligent infliction of emotional distress. *Id.*

### (2) *Amanda Williams*

In William's brief, she focused solely upon the physical manifestation of injury component of her emotional distress claim. The parties, however, failed to address whether Madison County owed Amanda Williams a duty such that she could maintain an independent claim for negligent infliction of emotional distress. Madison County argued only that, because Travis Williams' claims failed, Amanda Williams' derivative claims failed as well.

Amanda Williams may not maintain a negligent infliction of emotional distress claim as a matter of law. Madison County owed her no duty based upon the facts asserted here. *See Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 953 P.2d 1363, 1364 (Idaho 1998) (explaining that employer did not owe a duty to the spouse of an employee terminated from employment, and dismissing spouse's claim for negligent infliction of emotional distress). Amanda Williams may, however, maintain a loss of consortium claim derivative of Travis Williams' negligence claim, despite not giving the claim a separate heading in the complaint.

In Idaho, a claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse. *Jeremiah v. Yanke Machine Shop, Inc.*, 953 P.2d 992, 999 (Idaho 1998). A loss of consortium claim is necessarily dependent on the injured spouse's success or failure in the underlying tort claim against the third party. *Lightner v. Hardison*, 239 P.3d 817, 824 (Idaho Ct. App. 2010). The extent of the injury to the injured spouse determines the scope of the loss of consortium. *Zaleha*, 953 P.2d at 1365. An award for loss of consortium may be supported by substantial competent evidence of the loss of services, society, companionship, sexual relations, comfort, protection, and aid as a result of the injury to one's spouse. *Phillips v. Erhart*, 254 P.3d 1, 10 (Idaho 2011). Amanda Williams has adequately pled the elements of a loss of consortium claim in the Second Amended Complaint. [25]

---

[25] The Court declines to recommend dismissal of Amanda Williams' claim based upon Madison County's argument that it was not separately pled. Amanda Williams alleged "loss of companionship, society and comfort with Travis Williams" as part of Count V, adequately setting forth a loss of consortium claim.

Next, the loss of consortium claim is wholly derivative upon Travis Williams'
negligence claim, not his civil rights claims. *Jeremiah*, 953 P.2d at 999 (explaining that
federal courts "have almost unanimously denied derivative loss of consortium claims
based on the violation of the spouse's civil rights"); *Lightner v. Hardison*, 239 P.3d 817,
824 (Idaho Ct. App. 2010) ("a derivative loss of consortium claim based on the violation
of [a spouse's] civil rights will fail because 42 U.S.C. § 1983 does not recognize a loss of
consortium cause of action."). Amanda Williams must prove Travis Williams suffered
physical injuries as a prerequisite to her recovery for loss of consortium. *Zaleha*, 953
P.2d at 1365. *See also Lightner*, 239 P.3d at 824.

Travis Williams allege he suffered physical manifestations of emotional injury
resulting from his job loss. Madison County failed to argue or otherwise present
sufficient facts in its motion for summary judgment that Amanda Williams cannot prove
her loss of consortium claim as pled in the complaint, and therefore the County did not
carry its burden of proof upon summary judgment.

### C.    *Whistleblower Claim*

The Idaho Protection of Public Employees Act ("Idaho Whistleblower Act"),
Idaho Code §§ 6-2101—2109, provides "a legal cause of action for public employees
who experience adverse action from their employer as a result of reporting waste and
violations of a law, rule or regulation." Idaho Code § 6-2101. A prima facie case for
retaliatory discharge under the Act requires Williams to show: (1) he was an "employee"
that engaged or intended to engage in protected activity; (2) his "employer" took adverse
action against him; and (3) the existence of a causal connection between the protected

activity and the employer's adverse action. The Whistleblower Act requires that a plaintiff file an action under the Act "within 180 days after the occurrence of the alleged violation of this chapter." Idaho Code § 6–2105(2).

Madison County argues Williams' retaliatory discharge claim based upon acts protected under the whistleblower statute was untimely filed because he was terminated from employment on July 27, 2012, but did not include a whistleblower claim until filing his first amended complaint on March 5, 2013, well outside of the 180 day requirement. Williams argues his claim relates back to his initial complaint, filed on November 9, 2012, because he raised issues with Sheriff Klingler regarding illegal handling of evidence on April 18, 2012, and again on June 26, 2012. Williams contends that he raised these issues in the context of being held to a different standard than other Sheriff's Office employees whose mishandling of evidence was never investigated, while he was disciplined for mishandling evidence, a claim he disputed.

An amended pleading relates back to the original pleading date when the claim asserted in the amended pleading arose out of the "conduct, transaction or occurrence set forth in the original pleading." Fed. R. Civ. P. 15(c). In determining whether an amended cause of action relates back, the emphasis is not on the new legal theory asserted, but whether the defendant's specific conduct, upon which the plaintiff is relying to enforce the amended claim, is identifiable with the original claim. *FDIC v. Jackson*, 133 F.3d 694, 701 (9th Cir. 1998). The Court should determine whether the two pleadings share a "common core of operative facts" sufficient to provide defendants with fair notice of the transaction, occurrence, or conduct called into question. *Id.*

Although Williams' original complaint and the amended pleading are based upon the same core of operative facts— namely the circumstances leading up to and including the termination of his employment—Williams' whistleblower claim introduces new facts of which Madison County was not aware based upon the allegations in the original complaint. Williams' contention that the complaint relates back because he raised the issue of illegal evidence handling during his disciplinary hearings is without merit. The Court must compare the two pleadings for some basis to conclude Madison County was put on notice, by the facts in the complaint, that a whistleblower claim could be raised. But the facts set forth in the November 9, 2012 complaint do not remotely reference any facts supportive of a whistleblower claim. Other than a vague assertion that Williams was "the subject of an apparent investigation whereby he was held to a standard not applied to other employees of the Sheriff's Department," there are no facts asserted about Williams' alleged reporting to his employer of any misconduct, waste, or rule violation to support a later addition of a whistleblower claim.

In other words, the original pleading does not alert Madison County that Williams reported misconduct to anyone sufficient to support a whistleblower claim. Because the original pleading does not provide Madison County with fair notice of the facts supportive of the whistleblower claim, the claim does not relate back to the original complaint's filing date. *Cf. McKee v. Peoria Unified School Dist.*, 963 F.Supp.2d 911, 923-24 (D. Ariz. 2013) (holding that when the crux of the plaintiff's First Amendment and due process claims was apparent in the original pleading, the amended claims related back).

Based on this analysis the Court concludes the whistleblower claim is barred by the 180 day statute of limitations in Idaho Code § 6–2105(2). Accordingly, the Court will recommend that summary judgment on Count VI be granted.

**CONCLUSION**

The Court finds the relevant facts undisputed in this matter and summary judgment should be granted, in part, in favor of Madison County. First, Plaintiffs should be permitted to move forward with their surviving claims against Madison County as the sole Defendant. Second, Travis Williams may maintain his constitutional due process claims for procedural and substantive due process violations in Counts I and II of the Second Amended Complaint. Third, Travis Williams may maintain his free speech claim in Count III. Count IV, Williams' wrongful termination claim based upon breach of contract, should be dismissed based upon the holding in *Hollist v. Madison County*; and Count VI, Williams' whistleblower claim, should be dismissed because it was not timely filed. Finally, Travis Williams has stated sufficient facts to survive summary judgment on his negligent infliction of emotional distress claim in Count V, and Amanda Williams may maintain a loss of consortium claim as pled, derivative of her husband's negligence claim.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Defendants' Motion to Strike (Dkt. 32) is **DENIED**.

2)      Plaintiff's Motion to Supplement the Record (Dkt. 35) is **DENIED AS MOOT**.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      Plaintiff's Motion for Summary Judgment (Dkt. 25) be **GRANTED IN PART AND DENIED IN PART**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **November 18, 2014**

Honorable Candy W. Dale
United States Magistrate Judge