UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRAVIS WILLIAMS and AMANDA WILLIAMS, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>MADISON COUNTY, IDAHO and the MADISON COUNT SHERIFF'S DEPARTMENT, a political subdivision of Madison County, Idaho,<br><br>Defendant. | Case No. 4:12-CV-00561-EJL-CWD<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

# INTRODUCTION

On November 18, 2014, Chief United States Magistrate Judge Candy W. Dale issued a Report and Recommendation ("Report"), recommending that Defendants' Motion for Summary Judgment be granted in part and denied in part. (Dkt. 45.) Judge Dale also issued an Order denying the Defendants' Motion to Strike and denying as moot the Plaintiffs' Motion to Supplement the Record. (Dkt. 45.) Any party may challenge a magistrate judge's proposed recommendation by filing written objections to the Report within fourteen days after being served with a copy of the same. *See* 28 U.S.C. § 636(b)(1); Local Civil Rule 72.1(b). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*

**ORDER - 1**

The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate judge. *Id.*; *see also* Fed. R. Civ. P. 72(b).

Defendants filed objections to the Report to which the Plaintiffs have responded. (Dkt. 47, 48.) The matter is now ripe for the Court's consideration. *See* Local Civil Rule 72.1(b)(2); 28 U.S.C. § 636(b)(1)(B).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. § 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation). "When no timely objection is filed, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

The Court has reviewed the entire Report as well as the record in this matter for clear error on the face of the record and none has been found. The Court has also conducted a *de novo* review of those portions of the Report to which the parties have objected and finds as follows.

## DISCUSSION

The procedural background and facts of this case are well articulated in the Report to which neither party objects. (Dkt. 45.) As such, the Court incorporates the Report's recitation of the background and facts in this Order. In short, the claims in this case arise from the termination of Travis Williams from his position with the Madison County Sheriff's Department. The Defendants filed a Motion for Summary Judgment as to all claims. Judge Dale recommended that the Motion be granted as to Counts IV and VI and granted in part and denied in part on Counts I, II, III, and V. (Dkt. 45.) Judge Dale also denied Defendants' Motion to Strike which Defendants have renewed in their objections. (Dkt. 47.) The Court finds as follows.

1) **Defendants' Motion to Strike**

The Report denied as moot the Defendants' Motion to Strike Mr. Williams' Affidavit concluding the contested portions of the Affidavit, with the exception of facts related to the First Amendment Claim, were not relevant to the decision. (Dkt. 45 at 11.) As to the facts concerning the First Amendment Claim, the Report concluded the statements were not hearsay because they were admissions of a party opponent. (Dkt. 45 at 33.) In their objections the Defendants reassert their Motion to Strike arguing particular statements by Mr. Williams in his Affidavit were relied upon in the Report's conclusion contrary to the ruling on the Motion to Strike deeming those statements to be irrelevant. (Dkt. 47 at 2.) Defendants now seek to strike Paragraphs 101-114 of Mr. Williams' Affidavit. Plaintiffs oppose the request to strike based on their original briefing and note that the Defendants did not object to paragraphs 101, 107, 111, or 113 in the original Motion to Strike. (Dkt. 48.)

This Court has reviewed the Report, the parties' arguments on this matter, as well as Mr. Williams' Affidavit. In general, Paragraphs 101-114 of the Affidavit describe Mr. Williams' version of the June 26, 2012 hearing before Sheriff Klingler and his efforts to find new employment in law enforcement following his termination. (Dkt. 29-11, Williams Aff. at ¶¶ 101-114.) Plaintiffs are correct that Defendants did not originally ask to strike all of the Paragraphs between 101-114 which they now reassert. Defendants' original Motion to Strike objected specifically to Paragraphs 102-106, 108-110, 112, and 114. (Dkt. 32.) Regardless, and as discussed more specifically below in this Order, the Court has considered all of these paragraphs and finds no error in the Report's ruling on the Motion to Strike and its discussion

regarding the facts alleged. As such, the Court rejects the Defendants' request to reassert its Motion to Strike.

2) **Defendants' Motion for Summary Judgment**

In general, the Report granted the Motion for Summary Judgment as to the claims for wrongful termination and whistleblower claim but denied the Motion as to the claims for violation of procedural due process, substantive due process, free speech, and negligent infliction of emotional distress. (Dkt. 45.) Defendants objections argue that all of Mr. Williams' § 1983 claims – the procedural and substantive due process claims – as well as his First Amendment claim should be dismissed. (Dkt. 47.) Plaintiffs counter that the Report properly decided the issues and should be adopted.

    A.    **Section 1983 Procedural Due Process Claim**

Plaintiffs' procedural due process claim alleges Mr. Williams was denied his due process rights because Sheriff Klingler acted as the decision maker at Mr. Williams' pre-termination hearing while having also previously made the decision to demote and also propose termination of Mr. Williams. (Dkt. 23 at ¶¶ 52-62.) The Report concluded that a genuine issue of material fact exists as to Mr. Williams' claim that he did not receive a hearing by a non-biased decision maker. (Dkt. 45 at 20.) The Report found that Sheriff Klingler's statements that he was not bias or prejudice towards Mr. Williams were insufficient to satisfy the due process requirements and that other facts existed from which a reasonable juror could infer that Sheriff Klingler was prejudice against Mr. Williams including: the number of disciplinary violations against Mr. Williams, the timing of the

termination decision following a favorable evaluation of Mr. Williams by another supervisor, Sheriff Klingler's statement that he could no longer rely upon Mr. Williams, and the filing of a notice of employment action against Mr. Williams shortly after Mr. Williams had submitted a notice of tort claim. (Dkt. 45 at 21.)

Defendants' objection argues that Mr. Williams was afforded proper due process before he was terminated because he was given notice of the allegations against him and a meaningful opportunity to be heard prior to his termination. (Dkt. 47 at 2.) In particular, Defendants challenge the Report's findings concerning the claims that Sheriff Klingler was a biased decision-maker and should not have been in charge of the hearing. Plaintiffs counter that summary judgment is properly denied on this claim because he was denied a hearing before an unbiased decision maker as required for due process. (Dkt. 48 at 3.) Plaintiffs maintain that a question of fact exist as to whether Sheriff Klingler's involvement and actions evidence that he was bias and/or prejudiced the outcome of the hearing. (Dkt. 48 at 5.)

Having reviewed the record in this case *de novo* on this question, the Court agrees with the discussion, analysis, and conclusion of the Report and will adopt the same. At the core of due process is the assurance that an individual will be afforded notice and a meaningful opportunity to be heard prior to being deprived of any significant property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Encompassed within the core principle of a meaningful opportunity to be heard is the requirement that there be a fair trial in a fair tribunal such that the hearing is conducted by an impartial non-biased decision maker. *See Hollist v. Madison Cnty.*, No. 4:13-cv-139-BLW, 2014 WL 5089941,

at *8 (D. Idaho Oct. 9, 2014). As stated in the Report, there are certain facts and evidence in the record from which a reasonable jury could conclude that Sheriff Klingler was biased and/or prejudice towards Mr. Williams such that he was not an impartial and neutral decision. The Court denies the objection to this issue.

B. **Section 1983 Substantive Due Process Claim**

The Report concludes that a question of fact exists as to the Plaintiffs' substantive due process claim such that summary judgment should be denied. (Dkt. 45 at 22.) In their objections, Defendants dispute this finding arguing there is no evidence sufficient to support a claim of "blacklisting" or evidence that Mr. Williams was foreclosed from other law enforcement positions. (Dkt. 47 at 11.) Defendants further contest the Report's finding of a question of fact as to the publication element of the claim. Plaintiffs counter that the Report correctly concluded that questions of fact exist as to whether he has been "blacklisted" and/or the publication requirement for substantive due process is met in this case. (Dkt. 48 at 6-7.)[1] The Court has reviewed the record in this matter *de novo* on these questions and finds as follows.

A plaintiff can make out a substantive due process claim if he is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis. *Sagana v. Tenorio*, 384 F.3d 731, 742-43 (9th Cir. 2004). Such a claim, however, is limited to "extreme cases, such as a 'government blacklist, which when

---

[1] Plaintiffs also dispute the Defendants' arguments that Sheriff Klingler had sole authority over Mr. Williams termination. (Dkt. 48 at 7-9.) The Court finds the Report properly dealt with this argument.

circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 996 (9th Cir. 2007) (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)). To establish a substantive due process claim the "employee must show that '(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment.'" *Mustafa v. Clark Cnty. School Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (quoting *Matthews v. Harney Cnty.*, 819 F.2d 889, 891-2 (9th Cir. 1982)).

The Report properly concluded that the first and third elements of the claim were met in this case and that the issue here is whether the public disclosure requirement has been met. (Dkt. 45 at 23.) This Court's own review of the record finds that, as mentioned in the Report, the parties' briefing did not adequately discuss this particular issue. (Dkt. 45 at 23-24.) The focus of the briefing as to this claim was instead on whether Mr. Williams had a protectable property interest. (Dkt. 25-1 at 10-13) (Dkt. 29 at 10-12.)[2] The objections to the Report have now raised this discrete question more fully. Having reviewed the issue *de novo*, the Court is in agreement with Judge Dale's discussion, analysis, and conclusions in this regard. There are genuine issues of material fact that exist both as to whether Mr. Williams was "blacklisted" from securing a job in law enforcement and whether the publication element

---

[2] As pointed out in the Report, Mr. Williams' response brief did touch on the fact that he would be required to disclose the reasons for his termination on future law enforcement job applications. (Dkt. 45 at 23-24.)

**ORDER - 8**

of the claim has been satisfied.

### 1. Public Disclosure Requirement

Defendants contend that the public disclosure element has not been shown here because the Idaho Public Records Act does not require publication nor has there been any other affirmative government action publicly disclosing the reason for Mr. Williams' termination. (Dkt. 47 at 13.)

The Report relied on *Cox v. Roskelley* which holds that absent expungement, the placement of stigmatizing information in an employee's personnel file may constitute publication where the governing state law mandates disclosure of an employee's personnel file. (Dkt. 45 at 25-27) (citing 359 F.3d 1105, 1111-12 (9th Cir. 2004)).[3] The reasoning applicable to the holding in *Cox* turns on whether the stigmatizing information was contained in the employee's personnel file and was subject to public disclosure. Plaintiffs maintain this reasoning holds true under the facts here because the release of the stigmatizing information is compelled by the circumstances of the law enforcement application process which requires Mr. Williams to disclose and/or release his personnel file to prospective employers. (Dkt. 48 at 7.) The Defendants argue that *Cox* does not apply because, unlike the public records statute in *Cox*, the Idaho Public Records Act applicable here exempts from disclosure all personnel records and information, health records, and professional discipline of a public

---

[3] The Report misstates that *Cox* was decided after another case in this District, *Dixon v. City of Coeur d'Alene*, Case 2:10-cv-00078-LMB, wherein the court held that the plaintiff police officer had shown questions of fact existed as to the question of whether he had been blacklisted because of the actions taken by the defendants. (Dkt. 45 at 25.) The *Cox* case was actually decided before *Dixon*. The Court does not find this temporal inaccuracy substantively impacts the Report's analysis.

employee without written consent of the employee. *See* Idaho Code § 9-340C. The Report agreed with found a question of fact existed on this issue based on the distinct nature of law enforcement employment applications which often require confidentiality waivers and extensive background investigations. (Dkt. 45 at 27.)

In their objections, Defendants contend that the reasoning in *Engquist* limiting claims of "blacklisting" to "extreme cases" should be applied here so as to require that there be "some affirmative act by the employer in publishing information that has the effect of scuttling the employee's effort to find future employment." (Dkt. 47 at 13.) *Engquist* dealt with repeated defamatory statements made by a supervisor to others in the industry about planning to fire the plaintiff-employee. *Engquist*, 478 F.3d at 996.

As to the Report's finding that a genuine issue of material fact has been shown on the publication requirement, the Court has reviewed this issue *de novo* and is in agreement with the Report's analysis and conclusion. As discussed in the Report, the case law does not, as Defendants argue, require that the government entity affirmatively disseminate information of an employee's personnel file in order for there to be a publication, particularly in the case of law enforcement applications. (Dkt. 45 at 24-28.) The critical factors for the publication determination are that the information is maintained in the employee's file and the file is public. *See Cox*, 359 F.3d at 1111-12 (Washington's public records law mandated disclosure upon request in a case where the stigmatizing information was maintained in the plaintiff's personnel file.); *Llamas v. Butte Community College Dist.*, 238 F.3d 1123 (9th Cir. 2001) (discussing the unique nature of law enforcement applications which require applicants to

release their personnel files including reasons for prior termination from employment).

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that ... interferes with rights implicit in the concept of ordered liberty." *Engquist*, 478 F.3d at 996 (quoting *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004) (internal quotation marks omitted). Thus, in order to sustain an occupational liberty substantive due process claim, the claimant must show some government action that caused the prospective employee to be "blacklisted" or effectively excluded from their occupation. *Id.* at 997-98. Contrary to the Defendants' argument, however, the Court does not find that the publication must be an "affirmative act" of the government. (Dkt. 47 at 13.) In certain circumstances, publication may occur without an affirmative action from the government-employer.

The Court finds the disputed facts of this case present just such a circumstance. Mr. Williams has shown a question of fact exists as to whether the allegedly stigmatizing material in his personnel file has been published because he was effectively required to disclose his personnel file to prospective employers in order to pursue his chosen occupation. While not as complete as the evidence offered in *Dixson*, the Court agrees with the Report's discussion finding Mr. Williams' materials in this case to be sufficient to overcome summary judgment as to the publication requirement.

Having found a question of fact exists as to the publication element, the Court makes clear that there must still be sufficiently damaging affirmative government action, as contemplated by *Engquist*, in order to sustain a substantive due process claim for

occupational liberty. *See Fritz v. Norblad*, 566 F.Supp. 1459, 1464 (D.Or. 1983) ("the stigma of being fired, alone, even for false reasons, does not create a liberty interest."). An affirmative act may be alleged to arise where the government itself publishes or discloses the stigmatizing information. The government action requirement is not, however, limited the act of publishing. For instance, governmental action may be shown where the government places the stigmatizing material in the employee's personnel file. *See Rivers v. County of Marin*, No. C-09-1614 EMC, 2010 WL 145094, at *6-7 (N.D. Cal. Jan. 8, 2010); *Cox*, 359 F.3d at 1110-13. Whether that governmental involvement or action alleged rises to the level sufficient to satisfy the requirements for a substantive due process claim is another question discussed further below.

### 2. Evidence of Foreclosure from Employment

In *Engquist*, the Ninth Circuit made clear its intent that claims of substantive due process arising from governmental employer's actions publicizing information effectively excluding the prospective employee from his or her occupation should be limited to "extreme cases." *Engquist*, 478 F.3d at 997-98. The *Engquist* decision goes on to articulate what the plaintiff-employee must show in order to bring an occupational liberty claim – "how much interference with someone's job prospects constitutes a denial of the right to pursue a profession." *Id.* at 998 In defining the level of interference required, the Ninth Circuit held that a plaintiff must show that the "character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities." *Id.* (quoting *Bordelon v. Chicago Sch.*

**ORDER - 12**

*Reform Bd. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000)). Defendants argue Mr. Williams has not made such a showing in this case. (Dkt. 47 at 11-12.)

The substantive due process claim alleges that given the number and nature of the allegations in the termination notice, Mr. Williams "was essentially blacklisted from ever working in law enforcement as a result of the alleged policy and procedure violations asserted in the reasons for termination." (Dkt. 29 at 10-11.) The Defendants' objection argues there is no evidence of Mr. Williams having been denied employment or the facts in this case make it an "extreme" case. (Dkt. 47 at 11-14.)

The Report concluded sufficient evidence had been presented to give rise to a genuine issue of material fact in the form of Mr. Williams' own testimony regarding his inability to obtain employment in law enforcement and the hiring criteria for such positions used in Bonneville and Bannock Counties. (Dkt. 45 at 28.)[4] In his Affidavit, Mr. Williams discusses the applications for law enforcement positions that he knew of or was aware of which required some type of full release of employment records and/or personnel files. (Dkt. 29 at 11) (Dkt. 29-11, Williams Aff.)[5] Mr. Williams' statements in his Affidavit regarding his

---

[4] Relatedly, in discussing the cases relevant to this question, the Report cites to the Affidavits of Scates, Clegg, and Brownliee that were filed in another case from this District, *Dixon v. City of Coeur d'Alene*, Case 2:10-00078-LMB, that have been made a part of the record in this case. (Dkt. 45 at 25 n. 20) (citing Dkt. 29-10, Casperson Aff. at Ex. H.) These Affidavits discuss the particular nature of hiring standards for law enforcement agencies and state that it is "virtually impossible" for individuals to find employment in law enforcement after having been previously discharged from a law enforcement position for reasons akin to lying, cheating, stealing, harassment, and/or intimidation.

[5] These are the particular paragraphs which are the subject of the Defendants' argument reasserting its Motion to Strike. Defendants' original Motion to Strike objected to Paragraphs 102-106, 108-110, 112, and 114 generally arguing that these paragraphs are inadmissible because they are argumentative, lack foundation, speculative, and irrelevant. (Dkt. 32.) The Report denied the Motion as moot concluding that the
(continued...)

inability to obtain employment in law enforcement appears to be based on his own personal knowledge given his job search since his termination. (Dkt. 29-11, Williams Aff.) As such, the statements are proper for consideration on this Motion.[6] Further, Plaintiffs point to Sheriff Klingler's deposition testimony stating that Mr. Williams would be disqualified from employment with Madison County were he to reapply given the nature of the allegations in the termination notice. (Dkt. 29-4, Klingler Depo. at 200-203.) As stated in the Report, this Court agrees that Mr. Williams has shown genuine issues of material fact exist as to whether he has been completely foreclosed from obtaining employment in his chosen career. Again, claims of government blacklist are limited to "extreme cases" where it is shown that the employee has been effectively excluded from his or her occupation. *Engquist*, 478 F.3d at 997-98 ("character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities." ). This is a high hurdle to clear. *See Eaton v. Siemens*, 2009 WL

---

[5](...continued)
contested statements were not considered for purposes of resolving the Motion for Summary Judgment. (Dkt. 45 at 11.) The Report does rely upon Mr. Williams "own testimony" in denying the Motion for Summary Judgment with regard to this claim which appears to be contrary to its ruling on the Motion to Strike. (Dkt. 45 at 28.) After carefully reviewing Mr. Williams' Affidavit, the Motion to Strike, and the Report, however, the Court finds the Report did not rely upon the particular portions of the paragraphs which were the subject of the Motion to Strike. Instead, its discussion of this claim was made in regards to the policies and applications for other counties set forth in the Affidavit which were not originally sought to be stricken by Defendants. (Dkt. 45 at 28.) The Defendants have now asked to strike all of the paragraphs from 101-114 which would now encompass the portions of the Affidavit considered in the Report. This Court has reviewed these paragraphs and finds the particular material relied upon in the Report was properly considered and, therefore, this Court denies Defendants' request to reassert its Motion to Strike and further request to strike additional paragraphs from the Affidavit.

[6] The Court makes no ruling at this time as to whether the evidence and/or testimony would be admissible at trial.

4929262, at *13-14 (E.D. Cal. Dec. 14, 2009) (citing cases failing to make the adequate showing for claim). Whether Mr. Williams can ultimately prevail at trial on this issue is not decided here.

Based on the foregoing, and for the reasons articulated in the Report which are adopted herein, this Court agrees that the Motion for Summary Judgment on this claim should be denied.

### C. First Amendment Free Speech Claim

Defendants object to the Report's conclusion that summary judgment should be denied as to the First Amendment claims arguing 1) the evidence establishes that Mr. Williams was terminated for numerous and repeated violations of policy unrelated to any free speech and 2) the speech relied upon do not involve a matter of public concern. (Dkt. 47 at 14-18.) Defendants assert that Mr. Williams was terminated because his conduct disrupted the Sheriff's Office and threatened the authority of the Sheriff, insubordination, refusal to follow the chain of command, violations of evidence handling procedures, and other violations described in detail in the Notice of Termination.

The objections focus on the Report's conclusion as to two pieces of speech: 1) Mr. Williams' concerns made to a fellow county employee regarding Sheriff Klingler's alleged comment while in public that "if [he] wasn't the Sheriff, [he] would kick [that individual's] ass" and 2) Mr. Williams' conversation with a County Commissioner in the grocery store concerning the constitutionality of the County's current policy for due process hearings. (Dkt. 45 at 31-32) (Dkt. 47 at 17.) The Report concluded there exists a question of fact on

this claim because two of the notices of personnel action indicate these comments were, at least in part, the basis for the proposed disciplinary action. (Dkt. 45 at 32.) Defendants contend these statements do not involve a matter of public concern but, instead, evidence Mr. Williams' insubordination. (Dkt. 47 at 17.) Plaintiffs maintain the speech touched on matters of public concern as they were not made in the context of Mr. Williams' official job duties and the substance of the comments went to the constitutionality of a county-wide policy and threats of violence by the County's highest law enforcement official. (Dkt. 48 at 10.)

Having reviewed the record herein, the Court finds the Report has properly concluded that summary judgment was not appropriate on this claim as there is a question of fact as to whether Mr. Williams was terminated because of his speech. As to the slightly different inquiry raised in the Defendants' objection of whether these comments go to a matter of public concern, the parties do not appear to dispute the law as articulated by Judge Dale which this Court is in agreement with and incorporates herein. (Dkt. 45 at 30.) Applying that legal reasoning here *de novo* to this objection, the Court finds that the comment made in regards to the Sheriff's alleged threat does not qualify as a matter of public concern. While such a statement is inflammatory and perhaps inappropriate, the substance of the statement does not go to a matter of legitimate public concern such as the performance or operation of the government. This speech is more akin to a personnel dispute. *See Allen v. Scribner*, 812 F.2d 426, 430 (9th Cir. 1987). As such, the Court does not find this statement to be a proper basis for Plaintiffs' First Amendment claim and summary judgment is appropriate as to this particular statement.

Mr. Williams' comment concerning the constitutionality of the County's due process hearing procedure does, however, involve a matter of legitimate public concern. *See Pickering v. Board of Educ.*, 391 U.S. 563, 571 (1968). Expressing concern over whether the County's current hearing procedure is constitutional certainly gives rise to matters concerning the operation of the government over which the public would be concerned. The Motion for Summary Judgment is denied as the this claim.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** as follows:

1) The Report and Recommendation entered on November 18, 2014 (Dkt. 45) is **ADOPTED**, except as otherwise stated herein, and Defendants' Motion for Summary Judgment (Dkt. 25) is **GRANTED IN PART AND DENIED IN PART**. The Motion for Summary Judgment is granted on Counts IV and VI and granted in part and denied in part on Counts I, II, III, and V.

2) Defendant's Renewed Motion to Strike (Dkt. 47) is **DENIED**.

3) The parties are directed to confer and submit a joint notice to the Court on or before **February 23, 2015**, indicating how they intend to proceed on the remaining claims in this case, whether it be by engaging in a second round of settlement discussions or selection of a trial date. In the event the parties desire to proceed to trial, the court's available trial dates[7] are: July 7, 2015, August 4, 2015, or September 29, 2015, at 9:30 a.m..

DATED: **February 2, 2015**

Honorable Edward J. Lodge
U. S. District Judge

---

[7] The parties are further advised that criminal matters may also be set on that date, which would supersede all civil settings; however, civil matters would commence in the order set at the conclusion of any criminal proceedings, if time allows.

**ORDER - 17**