THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRAVIS WILLIAMS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MADISON COUNTY, <br><br> Defendant. | CASE NO. C12-0561 JCC <br><br> ORDER DENYING FRONT PAY AND GRANTING IN PART ATTORNEY FEES AND COSTS |

This matter comes before the Court on Plaintiffs' motions for front pay (Dkt. No. 112) and attorney fees and costs (Dkt. No. 113-1). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiffs' motion for front pay and GRANTS IN PART Plaintiffs' motion for attorney fees and costs.

## I.    Background

On October 7, 2015, a jury found that Defendant Madison County had violated Plaintiff Travis Williams' procedural due process rights under 42 U.S.C. § 1983, (Dkt. No. 23 at 10), because it did not provide him with an unbiased, impartial decisionmaker before terminating him. (Dkt. No. 111 at 2-4.) The jury awarded Mr. Williams $111,000 in economic damages for this violation. (*Id.*) The jury also found that Madison County was liable for negligent infliction of

emotional distress, and awarded Mr. Williams $11,000 on this basis. (*Id.* at 6.) In addition, the jury awarded Amanda Williams, Mr. Williams' wife, $28,000 for loss of consortium in connection with Mr. Williams' negligence claim. (*Id.*) In total, the jury awarded Plaintiffs $150,000.

Plaintiffs did not prevail on all of their claims. The jury found that Defendant did not violate Mr. Williams' substantive due process rights, because he has not been permanently foreclosed from working in law enforcement. (*Id.* at 4.) The jury also found that even though protected speech was a substantial or motivating factor in Mr. Williams' termination, he would still have been terminated even if it played no role. (*Id.* at 5.)

Plaintiffs now move that the Court award Mr. Williams front pay because of his termination, and award Plaintiffs' counsel their reasonable attorney fees and costs. The Court will address these motions in turn.

## II.    Discussion

### A.    Front Pay

Both reinstatement and front pay may be available, although not simultaneously, "for discharges that violate 42 U.S.C. § 1983." *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 831 (3d Cir. 1994). However, "[j]udicial discretion is at the heart of the decision" whether to award a plaintiff either of these equitable remedies. *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1012 (9th Cir. 2010). Because of the evident hostility between Mr. Williams and his former superiors and coworkers, reinstatement is not a viable option. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir. 1986). For this reason, the Court may instead choose to grant Mr. Williams front pay in lieu of reinstatement. *Id*.

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 2

"[F]ront pay is an award of future lost earnings to make a victim of discrimination whole." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987). Nevertheless, "front pay is intended to be temporary in nature." *Id.* "Because of the potential for windfall ... [the use of front pay] must be tempered. It can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment."*Traxler*, 596 F.3d at 1012 (quoting *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir.1991)). In addition, front pay awards "must be reduced by the amount plaintiff could earn using reasonable mitigation efforts." *Cassino*, 817 F.2d at 1347. Because Mr. Williams has obtained a new job that largely mitigates any damages he may have suffered, the Court declines to grant him front pay.

Mr. Williams is now earning roughly $20,000 more at Teton Toyota than he was at the Madison County Sheriff's Department. (Dkt. No. 112-15 at 11-12.) Plaintiffs argue that the Court should account for the additional income Mr. Williams has lost because he can no longer engage in part-time employment. But the proper comparison is between the job he lost—working for the Sheriff's Department—and his new job at Teton Toyota. *Cf. Traxler*, 596 F.3d at 1012 ("[A] front pay... award is the monetary equivalent of the equitable remedy of reinstatement." (internal quotation marks omitted)). Because front pay is awarded in lieu of reinstatement, it is logically concerned with what a plaintiff earned at the previous job where he can no longer be reinstated, not with any benefits he may have received unrelated to that job. [1]

---

[1] Plaintiffs also argue that we should consider Mr. Williams' increased travel time to and from his job and the related costs. However, as Defendant points out, Plaintiffs did not raise this issue at trial, therefore the Court declines to consider it. *See United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987) ("[T]he district court has broad discretion in determining the conduct and order of the trial."). Had Plaintiffs raised this issue at trial, defense counsel could have cross-

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 3

Mr. Williams testified that Teton Toyota provides him with a substantial benefits package, including tuition reimbursement for any of his children who attend an Idaho university. (Dkt. No. 116 at 7.)[2] Although Plaintiffs argue that the tuition reimbursement is "speculative," it is no more speculative than their argument that Mr. Williams would still have been employed at the Sheriff's Department in four to seven years in order to receive his pension. In addition, if Mr. Williams once more becomes employed in law enforcement in Idaho—or in another qualifying "public employee" position—he will be able to obtain the pension benefits that he is now requesting. Idaho Code §§ 59-1301, -1360. This would create an impermissible windfall.[3] Given Mr. Williams' testimony as to how much he loved working in law enforcement, and how much he dislikes his current job, this is a distinct possibility.[4]

Therefore, the Court finds that the equitable remedy of front pay is not necessary to make Mr. Williams "whole."

---

examined Mr. Williams on whether he planned to mitigate the increased length of his commute, such as by moving closer to his new job.

[2] Although Exhibit 24, the Teton Toyota Employee Handbook, wasn't admitted into evidence, Mr. Williams did testify regarding the benefits he receives at Teton Toyota. Plaintiffs made no objection to this testimony.

[3] Plaintiffs rely heavily on *Blum v. Witco Chem. Corp.*, a Third Circuit case whose warning the Court finds instructive: "We caution, however, that [pension] benefits may not be available where an award would make a plaintiff more than whole, such as where a plaintiff has found subsequent employment at a greatly increased salary that would offset any loss of pension benefits, or where defendant can prove that the new employer's pension plan would provide plaintiff with approximately the same benefit he lost due to the defendant's discriminatory firing." 829 F.2d 367, 373 (3d Cir. 1987). Although Teton Toyota does not offer a pension plan, the Court finds that Mr. Williams' "greatly increased salary," the significant savings he may receive through Teton Toyota's tuition reimbursement program, and the possibility that he may still receive his pension benefits in the future counsel against awarding front pay.

[4] Although Mr. Williams may face some obstacles to becoming a law enforcement officer, the jury found that he has not been permanently foreclosed from this career. (Dkt. No. 111 at 4.)

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 4

**B.      Attorney Fees and Costs**

Plaintiffs also move that the Court award them attorney fees and costs. The Court in its discretion may award the prevailing party in a 42 U.S.C. § 1983 action reasonable attorney fees. 42 U.S.C. § 1988(b); *see also* 461 U.S. 424, 429 (holding that the prevailing party in a § 1983 action is entitled to an award of reasonable attorney fees "unless special circumstances would render such an award unjust"). Because Plaintiffs prevailed on Mr. Williams' procedural due process claim, (Dkt. No. 111 at 2-4), they are the prevailing party. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.").

A court may only award "reasonable" attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (holding that even where an award of fees is warranted, "[i]t remains for the district court to determine what fee is 'reasonable'"). These are determined using the lodestar method, which involves "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). A court determines a reasonable hourly rate by identifying "the prevailing hourly rate in [the relevant] community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the Kerr factors that are not already subsumed in the initial lodestar calculation."[5] *Morales*, 96 F.3d at 363-64.

_____

[5] The twelve *Kerr* factors are:

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 5

The most important factor in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar*, 506 U.S. at 114 (internal quotation marks omitted). Although a plaintiff need not prevail on all of his claims to be fully compensated, a court must take into account a plaintiff's ultimate success relative to what was desired. *Hensley*, 461 U.S. at 435-36. If a court determines that the hours reasonably spent on a case multiplied by a reasonable rate would create a windfall based on the "limited success" of the case, then it may reduce the total to an amount it deems reasonable. *Id.* at 436-37.

### 1.    Hourly Rate and Hours Worked

Plaintiffs move for a total of $329,385 in attorney fees. (Dkt. No. 113-1 at 12.) Plaintiffs have submitted affidavits from two local attorneys on the customary hourly rates attorneys in Southeastern Idaho charge for employment-related civil rights cases. (Dkt. No. 113-5 at 2-4; Dkt. No. 113-6 at 2-4.) Both attorneys affirm that Plaintiffs' counsel's hourly rates, which range from $325 to $175, are reasonable for the community given counsel's experience, the complex nature of the case, and its contingent fee structure. (*Id.*) The rates requested are also lower than those deemed acceptable in other recent Idaho civil rights cases. *See Cmty. House, Inc. v. City of Boise*, 2014 WL 1247758, at *6 (D. Idaho Mar. 25, 2014) (finding an hourly rate of $400 reasonable for

---

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In making our determination, the Court has considered the non-subsumed *Kerr* factors where relevant.

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 6

1   Fair Housing Act litigation in Boise); *Latta v. Otter*, 2014 WL 7245631, at *1, *4 (D. Idaho Dec.

2   19, 2014) (finding an hourly rate of $400 reasonable for §1983 litigation in Boise).

3       Defendant argues that DeAnne Casperson's and Amanda Ulrich's rates are presumptively

4   unreasonable, because they are higher than they were in *Hounshel v. Battelle Energy Alliance,*

5   *LLC*, a Title VII employment matter that Ms. Casperson and Ms. Ulrich previously litigated.

6   2014 WL 4182680, at *2 (D. Idaho Aug. 21, 2014). But the fee in that case was not contingent.

7   (Dkt. No. 117 at 2). Moreover, Ms. Casperson has testified that Plaintiffs' counsel raised their

8   rates upon learning that they were low for their community. (Dkt. No. 113-2 at 3). Given the

9   complexity of this case, the contingent nature of the fee, and Plaintiffs' counsel's skill and

10  experience, the Court finds that Plaintiffs' counsel's rates are reasonable.

11      The Court has examined the hours Plaintiffs' counsel expended on this case and finds

12  them to be reasonable as well, (Dkt. No. 113-3), with the exception of Ms. Ulrich's erroneous

13  entry on September 24, 2015, which Plaintiffs' counsel have acknowledged. (Dkt. No. 117 at 7

14  n.2.) Although we need not "achieve auditing perfection," we find that Plaintiffs' counsel have

15  credibly rebutted Defendant's arguments that their hours expended were unreasonable. *See Fox*

16  *v. Vice*, 131 S. Ct. 2205, 2216 (2011) ("[T]rial courts need not, and indeed should not, become

17  green-eyeshade accountants. The essential goal in shifting fees…is to do rough justice."). Given

18  that Plaintiffs' counsel were victorious, the Ninth Circuit instructs that we defer to their

19  "professional judgment as to how much time [they were] required to spend on the case." *Moreno*

20  *v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

21          **2.    Limited Success**

22      Plaintiffs' counsel ultimately achieved a satisfactory result for their clients. The jury

23  found that Mr. Williams' procedural due process rights were violated, and that he would not

have been fired otherwise. (Dkt. No. 111 at 2-4.) In addition to the financial compensation and personal vindication Mr. Williams received, his victory may also cause other counties to rethink their appeals processes for public employees. Such a nonmonetary result is relevant to Plaintiffs' counsel's level of success. *Morales*, 96 F.3d at 364 n.11.

Defendant argues that Plaintiffs' counsel's total fee should be proportionally reduced because Mr. Williams was only successful on one of his three § 1983 claims. But the Supreme Court has rejected a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley*, 461 U.S. at 436 n.11. Instead, "the result is what matters." *Id.* Defendant also argues that Plaintiffs' counsel should not be awarded for any hours spent working on Mr. Williams' whistleblower claim, which was dismissed on summary judgment. Although Defendant argues that this claim was factually distinct from Mr. Williams' § 1983 claims, the Court disagrees. Mr. Williams' whistleblower claim arose from facts directly related to the issue of whether he was terminated for cause. (Dkt. No. 23 at 14.) Therefore, we will not reduce Plaintiff's counsel's fee on this basis. *See McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) ("[I]n a lawsuit where the plaintiff presents different claims for relief that involve a common core of facts…, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." (internal quotation marks omitted)).

Nonetheless, an award of $329,385 is disproportionately high given the gap between what Plaintiffs' counsel intended to achieve and what they actually achieved. *Hensley*, 461 U.S. at 436. Although Plaintiffs' counsel prevailed on Mr. Williams' procedural due process claim, they failed to persuade the jury on his substantive due process claim, which may have been even more important. (Dkt. No. 111 at 4.) Had the jury found that Mr. Williams was permanently foreclosed from working in law enforcement—the career that he loved—they would surely have

bestowed a greater award. Moreover, this finding also led, in part, to our decision that Mr.

Williams need not be awarded front pay, since he may one day work in law enforcement again.

Therefore, we use our discretion to award Plaintiffs' counsel attorney fees totaling $275,000,

rather than $329,385.

### 3.   Costs

Section 1988 also authorizes a court to award the prevailing party those costs that are

normally charged to fee-paying clients. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216

n.7 (9th Cir. 1986). Here, Plaintiffs' counsel has incurred costs totaling $20,819.46. (Dkt. No.

113-1 at 14.) The Court has examined these costs, and finds them to be reasonable and of the

type that are normally billed to fee-paying clients. (Dkt. No. 113-4.) The Court therefore awards

Plaintiffs' counsel their costs in full.

### 4.   Offer of Judgment

Defendant argues that Plaintiffs' counsel should only receive the costs and fees they

accrued up until July 29, 2015, because Plaintiffs refused the $350,000 offer of judgment

Defendant served them on that date. (Dkt. No. 114-1 at 5-7.) Under Federal Rule of Civil

Procedure 68, "[i]f the judgment that the offeree finally obtains is not more favorable than the

unaccepted offer [of judgment], the offeree must pay the costs incurred after the offer was

made." Fed. R. Civ. P. 68(d). These costs include attorney fees. *Marek v. Chesny*, 473 U.S. 1, 9

(1985). Because the "usual rules of contract construction apply to a Rule 68 offer of judgment….

ambiguities are construed against the offeror." *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830,

833 (9th Cir. 1997) (internal quotation marks omitted). Consequently, when an offer of judgment

includes costs and fees but fails to limit them to the date of the offer, it is interpreted to include

those that are incurred after that date. *Holland v. Roeser*, 37 F.3d 501, 504 (9th Cir. 1994).

In this instance, Defendant's offer of judgment either unambiguously included all costs and fees that could be awarded both before *and after* the offer was made, or it was ambiguous. (*See* Dkt. No. 114-1 at 5 ("This offer of judgment shall be deemed to include all claims recoverable, including any and all costs and attorney fees allowed by law.").) Because we must construe it against Defendant, the Court finds that the offer included costs and fees for the entire litigation, not just those accrued up to the date of the offer. Therefore, the proper comparison is not between $350,000 (the offer) and the jury award ($150,000) plus Plaintiffs' counsel's costs and fees on July 29, 2015 (approximately $133,077.69, according to Defendant). Rather, it is between $350,000 and the jury award plus the costs and fees that we have now chosen to award ($295,819.46). This comparison is therefore between $350,000 and $445,819.46. Thus, Plaintiffs' ultimate judgment was greater than the offer of judgment, so Plaintiffs' refusal does not preclude them from receiving post-offer costs and fees.

## III.    Conclusion

For the foregoing reasons, Plaintiffs' motion for front pay (Dkt. No. 112) is DENIED. Plaintiffs' motion for attorney fees and costs (Dkt. No. 113-1) is GRANTED IN PART. The Court ORDERS that Plaintiffs' counsel shall be awarded $275,000 in attorney fees and $20,819.46 in costs, for a total of $295,819.46.

//

//

//

//

//

//

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 10

1

DATED this 3 day of December 2015.

2

3

4

5

6

7

John C. Coughenour
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING FRONT PAY AND
GRANTING IN PART ATTORNEY FEES AND
COSTS
PAGE - 11