UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRAVIS WILLIAMS and AMANDA WILLIAMS, husband and wife,<br><br>     Plaintiffs,<br><br>     v.<br><br>MADISON COUNTY, IDAHO and the MADISON COUNTY SHERIFF'S DEPARTMENT, a political subdivision of Madison County, Idaho,<br><br>     Defendants. | Case No. 4:12-cv-00561-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Travis Williams' Motion in Limine (Dkt. 186) and Defendants Madison County and Madison County Sheriff's Department's (collectively "Madison County") Motion in Limine (Dkt. 187).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons outlined below, the Court will GRANT in PART and DENY in PART each Motion.

## II. BACKGROUND

The facts of this case are well known to both parties and the Court will only

include a brief recitation here for context.

Williams was previously employed by Madison County. Madison County terminated Williams' employment on July 27, 2012. At the time of Williams' termination, Madison County operated under the 2006 Madison County Personnel Policy ("MCPP"). On November 9, 2012, Williams filed the instant lawsuit alleging numerous causes of action. After the issues were tried by a jury, the Court entered Judgment on December 4, 2015, requiring Defendants to pay $445,819.46 in damages, costs, and attorney fees. Dkt. 120.

Defendants appealed to the Ninth Circuit Court of Appeals and on July 10, 2018, the Ninth Circuit entered its Memorandum Decision vacating and remanding the judgment on Williams' procedural due process claim and award of attorney fees, and reversing entirely the judgment in favor of Williams' wife's loss of consortium claim and Williams' negligent infliction of emotional distress claim. Dkt. 168.

As part of the original trial in this matter, this Court instructed the jury that Mr. Williams had a property right in his employment as a matter of law. On appeal, the Ninth Circuit found that the Court had given this instruction in error. The Ninth Circuit noted that "there is an issue of fact as to whether Plaintiff had a property right in his continued employment, given the many provisions in the personnel manual, including those disclaiming contractual obligations and reserving management rights, and in light of *Mitchell v. Zilog, Inc*., 874 P.2d 520 (Idaho 1994)." *Williams v. Madison Cty., Idaho*, 741 F. App'x 372, 374 (9th Cir. 2018). Based on the Ninth Circuit's decision, the Court entered an order limiting the retrial of this matter to the single issue of "whether

[Plaintiff] had a property right in his continued employment with Madison County." Dkt. 177, at 2.

In anticipation of the upcoming trial, and pursuant to the Court's trial order (Dkt. 179), both parties filed motions in limine seeking to preclude certain evidence and testimony at trial. While the motions overlap to some degree, for organizational purposes, the Court will address each motion—and each sub-part—in turn as filed by the parties.

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

# IV. ANALYSIS

## A. <u>Plaintiff's Motion in Limine[1]</u>

In his Motion in Limine, Williams moves to be allowed to introduce evidence with regards to Madison County's decision to alter the status of its employees from "for-cause" to "at-will." He also moves to exclude evidence of Madison County's November 10, 2010 disciplinary action against him and to prohibit Madison County from referencing the idea that a contract is required for an employee to have a protected property interest in employment. The Court will examine each issue in turn.

> *1.  Evidence related to Madison County's decision to alter the status of its employees from "for-cause" to "at-will"*

**GRANTED (with withheld ruling on some issues).**

Williams first requests a court order that allows him to introduce evidence that Madison County changed the status of its employees from "for-cause" to "at-will" after he was terminated. Williams contends that this information is relevant and helpful in understanding the parameters of his employment relationship with Madison County. Madison County filed a similar motion asking that this same information be excluded entirely. In its view, the information is irrelevant, constitutes inadmissible hearsay, and is evidence of subsequent remedial measures. As this cross-motion is arguably the most crucial motion at this juncture, it will be addressed in greater detail than the others.

---

[1] For brevity, and due to time constraints, the Court will not reiterate each sides' arguments at length as to each individual motion in limine. Additionally, the Court's rulings on these motions are interlocutory. Depending on how certain evidence is presented at trial—particularly if the "door is opened" for any particular topic—the Court may reconsider its decision.

As a factual matter, Madison County reviewed and subsequently revised the 2006 MCPP in 2014 and 2015 to clarify that each employee's status was "at-will" as opposed to "for-cause." During this time, there were numerous commissioner meetings. At those meetings (and elsewhere) Troy Evans, deputy civil attorney for Madison County, explained the differences between "for-cause" and "at-will" employment, discussed the advantages and disadvantages of both structures, and opined generally on the MCPP.

Many of the 2014 and 2015 commissioner meetings were audio and video recorded. In the recordings, some Madison County Commissioners, as well as other individuals, expressed thoughts on "at-will" and "for-cause" employment, as well as their understanding of what the MCPP required. Additionally, some individuals used phrases such as "new policy" and "changed policy" in the recordings. Williams wishes to introduce this evidence to demonstrate that during the time of his employment with Madison County, he could only be terminated "for-cause."

Madison County denies that there was any "change" to its policy, but rather argues there was only a clarification and that the County Commissioners are free to adopt, modify, interpret, or revise its own policies at any time simply as part of its continuing duties. As for the specific information, testimony, and exhibits Williams will likely seek to introduce on this subject, Madison County objects for three reasons, each of which will be addressed below.

a. <u>Relevance</u>

First, citing to Federal Rule of Evidence 401,[2] Madison County asserts that the documents, video, and testimony offered by Williams are irrelevant. The Court disagrees.

Williams contends that in order to evaluate whether a person has a protected property right in their employment "all the circumstances surrounding the relationship" must be considered. *See Mitchell v. Zilog, Inc.*, 874 P.2d 520, 523 (1994). Madison County agrees, but asserts that the scope of these events (which took place approximately two to three years after Madison County terminated Williams) are niether relevant nor related to his actual termination. In its estimation, "the only relevant evidence to consider on this issue is the actual language of the policy that was in effect at the time of [Williams'] termination of employment, which was the 2006 MCPP." Dkt. 187, at 6. This argument, however, is undercut by Madison County's own admission that the changes were implemented *directly as a result of three employment lawsuits—including this one*. Clearly, the subsequent changes are related and relevant to Williams—even if separated in time. To be sure, it is undisputed that the 2006 MCPP was the governing document at the time of Williams' termination, but a finder of fact is entitled to consider other evidence (within reason) in an effort to understand that particular policy.

---

[2] "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401

As a side argument, Madison County asserts that Troy Evans "is not an elected official . . . not a representative of Madison County . . . does not have the authority to bind Madison County . . . does not have the authority to interpret the language of the MCPP . . . [and] as such, Mr. Evans opinions or statements are not relevant to any issue for the jury." Dkt. 187, at 6. The Court finds this position questionable.

While it may be true that "the county commissioners and elected officials are the only Madison County agents with authority to adopt policy, interpret policy, and bind the county," that does not mean that Evans testimony is irrelevant or inadmissible.[3] Evans was an attorney working for Madison County. It is his job to give legal advice to the individuals that adopt, interpret, and bind the county. Evans was the one who lead the discussions regarding the "change," answered questions, and gave recommendations.

Madison County is free to cross examine Evans and/or argue that Evans' statements were his opinion and non-binding, but the fact remains that Evans' testimony is relevant.[4] Moreover, Evans' testimony could also be important for impeachment

---

[3] The question of whether Evans is an agent of Madison County is not squarely before the Court at this time. Madison County states in passing that he is not an agent; Williams devotes a few lines arguing that he is. Whether Evans is an agent may become relevant in and of itself, but will also affect whether he is a "party opponent." The Court suggests the parties prepare 5-page briefs with relevant legal authority and explanation (often referred to as "pocket briefs") on this topic that can be submitted at trial should it become necessary.

[4] Madison County is also within its rights to argue more broadly that the "changes" were not true changes in policy, but clarifications implemented to avoid confusion. Additionally, Madison County can obviously object on any reasonable basis to specifics within Evans' testimony, but the Court will not wholesale preclude Evans' testimony on these topics at this time.

purposes. Accordingly, the Court finds the 2014-2015 revisions (and Evans' testimony) are relevant to the current action.

### b. Hearsay

Next, Madison County asserts that the testimony proffered is inadmissible as it constitutes hearsay. Williams submits that he will be able to lay the appropriate foundation and defeat any hearsay objection. The Court cannot rule on this issue at this time as it does not know the specific questions, answers, or objections that will be raised during trial. Both sides should be prepared to argue these issues at trial outside the presence of the jury.

### c. Subsequent Remedial Measures

Finally, Madison County argues that the 2014-2015 revisions to the MCPP are subsequent remedial measures and that the Court should exclude them accordingly. Federal Rule of Evidence 407 outlines that:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

"Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them." *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991).

Madison County asserts that it made the changes in the MCPP policy in response to this—and other pending—lawsuits, and that had the policy been in effect previously, it would have made the injury less likely, i.e., it contends that this is a textbook example of a subsequent remedial measure. The Court is not convinced.

The Court acknowledges the change may have resulted in less employment lawsuits for Madison County—although the Court does not know that for a fact—but more importantly, the "change" was not necessary to make that happen. Said differently, this is not the typical situation, such as in a product-liability case, where something is "broken" and needs to be fixed. A "for-cause" employment policy is completely legal, acceptable, and enforceable. In the end, while Madison County choose to go with an "at-will" policy as opposed to a "for-cause" policy *it did not have to do so.* The one was not remedial of the other. Each system has advantages and drawbacks, but are nothing more than different approaches.

Madison County's argument is further undercut by statements made by its own people and its later arguments in opposition to William's other requests in his Motion in Limine.

First, as the Court has already mentioned, certain county commissioners—as well as Sheriff Klingler—are on record as having made statements about the "changes" to the policy, including their personal understanding of what was, or was not, required when

terminating an employee—most notably that "cause" was required. All of that testimony must be presented to a jury for a sound determination.

Second, as will be discussed in the following section, Madison County wants to introduce evidence that Sheriff Klingler informed Williams that he was (or was being changed to) an at-will employee. Whatever the interpretation of those events, they are surely relevant to the overall picture. It is difficult to say that this continuing, changing, revising, or clarifying time in Madison County's MCPP history should include certain instance of Sheriff Klinger's actions, but exclude others. After a thorough review of the information now before the Court, it is apparent that all of these events, some even years later, are relevant to the question this jury must address.[5]

Finally, even assuming arguendo that the Court viewed this testimony and evidence as a subsequent remedial measure (which is does not), under Rule 407 the evidence could still be admissible as impeachment evidence—which likely will play a large role in this case.

While this testimony and evidence may arguably be damaging to Madison County's position, that does not make it inadmissible or prejudicial. Under Federal Rule of Evidence 403, the Court must weigh the competing interest of (1) the probative value of any evidence against(2) the prejudice, confusion, delay, or other dangers that may

---

[5] Additionally, the Court is not trying to split a hair too finely, but Williams is not trying to prove culpable conduct per se, but to interpret the prior policy by showing what a subsequent policy entailed. The Court is cognizant of the fact that a jury *may* take this interpretation too far (moving towards liability and the assumption Rule 407 seeks to protect) but Madison County will have a full and fair opportunity to present its case and rebut any presumption that may arise.

result if it is introduced. "Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008). A court has broad discretion in this inquiry. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Here, the Court finds that information surrounding the changes Madison County made to its personnel policy in 2014-2015 are relevant, not unduly prejudicial, and were not a subsequent remedial measure. The Court reserves ruling on specific hearsay, foundation, and other applicable objections until trial.

Additionally, Madison County devotes a few lines at the end of its brief to arguing that many of the exhibits relative to this topic were not previously disclosed. As the Court did not allow replies to the instant briefs, Williams has not had an opportunity to respond to this specific allegation. Accordingly, the Court is not prepared to rule on this motion at this time. At trial, with more information and explanation, it will do so. That said, it goes without saying that information not properly disclosed is inadmissible at trial—absent substantial justification. *See* Fed. R. Civ. P. 37(c)(1).

     *2.    Exclusion of the November 10, 2010 disciplinary action*

**DENIED**.

Williams also asks the Court to preclude Madison County's use of the November 10, 2010 Disciplinary Action changing plaintiff's employment status to at-will.

In September 2010, Williams was given notice that Madison County intended to terminate his employment. As required, Madison County gave Williams a hearing.

Subsequent to the hearing, Sheriff Klingler demoted Williams on November 10, 2010, with a reduction in pay and informed him that he was an at-will employee.[6]

As discussed above, these events are part of "all the circumstances" the jury must take into consideration when determining whether Williams had a property right in his employment. Like the facts previously discussed, this testimony and information may, or may not, help the jury decide how Madison County understood the 2006 MCPP and how it applied when the county terminated an employee.

Furthermore, contrary to Williams' assertions otherwise, the previous jury did not already determine this issue. Williams claims that because the prior jury determined 1) Madison County failed to provide him an unbiased, impartial decision maker and 2) Madison County failed to prove that if Williams had been given an unbiased, impartial decision maker, the same decision would have been made, it naturally follows that the disciplinary action was unsupported. This is not exactly accurate.

The previous jury's determination in the affirmative—that Williams was denied an unbiased, impartial decision maker and that the result would not have been the same if he had been provided an unbiased, impartial decision maker—goes to the decision maker at his due process hearings *but not necessarily to other actions taking by Madison County.* Williams argues that because the jury found that the *exact* disciplinary action taken

---

[6] This is another major factual dispute between the parties. Madison County argues that in doing so, Sheriff Klingler was notifying, or reminding, Williams that *he was* an at-will employee—just like the policy says. Williams, on the other hand, claims that Sheriff Klingler's actions were an effort to "change" his employment from for-cause to at-will which would contradict Madison County's stance that Williams was an at-will employee to begin with.

against him would not have been taken if he had an impartial decision maker, this means no cause existed to support any disciplinary action at all. While such an explanation and outcome is definitely plausible, it is not a foregone conclusion. The previous jury never made any explicit factual findings concerning Williams' employment status—they were in fact improperly instructed in that regard; hence the current retrial. Accordingly, it is improper to infer any meaning from the prior verdict on the issue of William's employment status and whether Klingler's actions—or anyone's actions—on November 10, 2010, correlate to the jury's finding regarding the decision-maker.

Yes, the same person the jury found to be a biased decision maker was the messenger of the November 10, 2010 disciplinary action, but that does not mean that the disciplinary action was unwarranted in and of itself. Madison County had an independent right to discipline its employees—per the 2006 MCPP.

Madison County can proffer this evidence in support of its case and Williams will have the opportunity to cross-examine and argue his position. However, the Court will not exclude evidence regarding the November 10, 2010 disciplinary action based on its related—but not clearly anticipated—relationship to the prior jury's findings.

3.    *Requirement of a contract for employment*

**GRANTED in PART; DENIED in PART**.

Finally, Williams asks the Court to prohibit Madison County from referencing the idea that a contract is required for an employee to have a protected property interest in employment.

As a threshold matter, this particular topic is extremely legal in nature. The Court, as opposed to a jury, is likely better suited to deal with this particular issue. As the Ninth Circuit noted at oral argument in this case, "the district court [of Idaho] seems to be all over the place" when it comes to personnel policies and whether they create a protected property right in continued employment. That said, a motion in limine with limited briefing is not the place for the Court to take a stand on such an important issue. Some modicum of understanding, however, is necessary, in order for this case to move forward during trial.

Williams does not dispute that a contract is required, however, he disputes that it must be in writing. Madison County does not dispute that the contract or agreement *need not* be in writing, but contends that it may be "express or implied." Surprisingly then, the parties are somewhat in agreement. In fact, each cites the same caselaw in support of its respective position.

In *Mitchell v. Zilog*, the Idaho Supreme Court held that "unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party." 874 P.2d 520, 523 (Idaho 1994). This presumption, however, can be rebutted "when the parties intend that an employee handbook or manual will constitute an element of an employment contract." *Id.* at 23–24. The Idaho Supreme Court went on to explain that "[a] limitation on the at-will relationship may be express or implied. A limitation will be implied when, from all the circumstances surrounding the relationship, a reasonable person could concluded that both parties intended that either party's right to terminate the

relationship was limited by the implied in fact agreement." *Id.* Furthermore, there is a question of "whether [the parties] specifically negate any intention of contract formation, and if not, is there a question of fact as to whether they were intended by the parties to express a term of the employment contract." *Id*; s*ee also, Bollinger v. Fall River Rural Electric Cooperative*, 272 P.3d 1263, 1269 (Idaho 2012) ("In the absence of an express contract, a limitation to the at-will employment presumption may be implied where the circumstances surrounding the employment relationship could cause a reasonable person to conclude that the parties intended a limitation on discharge. Statements made and policies promulgated by the employer, whether in an employment manual or otherwise, may give rise to such an implied-in-fact agreement. However, such statements must be more than vague statements of opinion or predictions, and policies must manifest an intent that they become part of the employment agreement.").

The Court has reviewed all the cases provided by each side and agrees that the current status of the law in Idaho is that while there need not be a written or formal contract, there must be a contract nonetheless. An implied agreement will suffice, and whether there is an actual or implied agreement is influenced by many things and is typically very case (and fact) specific.

Accordingly, the Court will allow both sides to argue their respective positions and put forth whatever evidence they deem necessary. That said, the Court *will not* instruct the jury that a formal contract is needed—as such is not consistent with the law. The Court will not, on the other hand, state that no contract at all is necessary—as that is also inconsistent with the law. The Court will instruct the jury that a contract is necessary

in these situations, but that it can be express or implied, and is based upon the intent of the parties and the surrounding circumstances.

Relatedly, Madison County has listed two proposed exhibits the Court must address. The first appears to be a Softball Coach Contract from Idaho State University; the second, a State of Idaho Renewable Teacher's Contract. Madison County claims that these exhibits are self-authenticating and that it will present them solely for illustrative purposes and to elicit testimony from Williams relevant to employment contracts generally. Williams claims that these exhibits have "nothing to do with any of the issues in this case" and should be precluded. The Court agrees.

Neither of the parties in this case were parties to either of the specific contracts Madison County wishes to introduce, nor would they ever be.[7] Furthermore, while Madison County wants to use these for illustrative purposes, they could accomplish the same thing they desire (by asking rhetorical questions about what a contract may or may not look like, language it might include, etc.) without confusing the jury by showing them contracts from two completely separate—and unrelated—entities that likely have differing policies, procedures, and employment situations than are at issue here. In short, the relevance and/or purpose of these exhibits is minimal at best and the Court will not allow these two exhibits at trial.

---

[7] In other words, even if not related to Williams or another police officer with Madison County Sheriff's Office, if the contract was as least related to Madison County in some sense, the Court might see potential relevance, but as it is, these contracts have absolutely no bearing on the case at hand.

In conclusion, the Court will allow both parties to talk about contracts, how one is (or is not) created in the employment context, and whether one existed between Madison County and Williams. The Court will not, however, instruct the jury inconsistent with the law in Idaho, nor will it allow Madison County to introduce two unrelated contracts into evidence.

**B.** **Defendants' Motions in Limine**

In Madison County's Motion in Limine, it moves to limit witnesses and evidence. It also moves to exclude revisions to the MCPP, prior MCPP drafts, information concerning ICRMP, reasons for Williams' termination, references to other employment law cases involving Madison County, and Kimber Rick's testimony. Finally, Madison County asserts that Williams has listed exhibits that were never previously disclosed. The Court will examine each issue in turn.

*1. Limitation on witnesses*

**GRANTED.**

Madison County's first request in its motion in limine seeks an order limiting Williams' witnesses to only those whose testimony is relevant to the issue of whether he had a property right in his employment. Madison County identifies eight witnesses who testified at the prior trial and argues their testimony is now irrelevant.

In response, Williams does not specifically address any of the witnesses identified by Madison County, but states that he has no intention of calling some of them, and agrees that there should be a limitation on witnesses during this trial—specifically, that the only witnesses who will be allowed to testify are those who can offer relevant

testimony on the limited issue of Williams' property right (or lack thereof) in employment.

The Court agrees with the parties. The single issue in this case is whether Williams had a property right in his employment. Witnesses should focus their testimony on that sole topic. While it may prove difficult to avoid some references (for context, background, or otherwise) to other matters, the parties should admonish their witnesses to not stray from the topic at hand.[8]

Each side still has the right to raise objections to witnesses and/or specific testimony and the Court will rule at that time.

### 2. Limitation on exhibits

**WITHHELD RULING.**

Madison County also asks the Court to exclude all irrelevant exhibits that were utilized in the prior trial. Again, Williams does not necessarily disagree that irrelevant exhibits should be excluded in this trial. To that degree, the Court agrees and grants the motion: only relevant exhibits will be allowed.

That said, Williams does disagree with Madison County's summary of which exhibits actual remain viable and relevant for this retrial. Madison County asserts that only the proposed joint exhibits 3–18 are relevant and appropriate. Williams disagrees.

---

[8] Williams notes that other witnesses may be necessary on the issue of front pay (should that become necessary) and that the Court should not exclude those individuals. The Court's ruling today addresses the witness *at trial* before the jury. Those who will testify on front pay should likewise not opine on mattes no longer at issue in this case, but those witnesses likely would not have so testified in the first instance. Again, any relevant objections may be raised if and when appropriate.

The Court typically does not weigh in on exhibits pre-trial, but does so during its final pre-trial conference or during trial. The same is the case here. It is difficult to know whether an exhibit should be admitted without knowing the foundation, reviewing the materials in context, and hearing the questions, answers, and objections.

More importantly, the rulings in this decision itself will answer many—but not all—of the objections related to exhibits raised by both parties. As the parties parse through the various rulings herein, the admissibility of the associated exhibits will be clear. The parties can raise any remaining question the morning of trial during the final pre-trial conference.

Furthermore, if either party intends to submit something into evidence during trial to which the other side has previously objected, the Court will hold a hearing outside the presence of the jury to consider the issue and how to proceed.

   3.   *Exclusion of revisions to the Madison County Personnel Policy*

**DENIED**.

As outlined above, the Court finds that this information is relevant, is not clearly a subsequent remedial measure, and is likely not hearsay—although Madison County is welcome to renew any specific objections (on foundation, hearsay, relevance, etc.) at trial. The parties should be prepared to specifically address whether Troy Evans is an agent of Madison County.

   4.   *Exclusion of prior MCPP drafts*

**GRANTED.**

Here, Madison County seeks an order precluding Williams from introducing into evidence an alleged draft of the MCPP that existed in 1999. Madison County asserts it is irrelevant and could confuse the jury. The Court agrees.

As the Court has already noted, a jury must consider "all the circumstances surrounding the relationship" to determine the type of employment agreement Williams had with Madison County. This specific MCPP is not necessary to evaluate the relationship Williams had with Madison County during the time at issue. The information Williams purportedly seeks from this document (that there was a one-year probationary period and that after this period an employee could only be fired for-cause) is available elsewhere—and from more relevant sources: namely, the 2006 MCPP and witness testimony.

Williams can certainly testify as to his understanding—from conversations with others, from his experience, and from the 2006 MCPP itself—that Madison County could only terminate him for-cause, but the 1999 MCPP is irrelevant to that discussion. Further complicating things is the fact that the parties dispute whether Madison County ever actually adopted the 1999 MCPP. This could cause juror confusion. For all of these reasons, the Court will exclude the 1999 MCPP.

5.  *Exclusion of information concerning ICRMP*

**GRANTED.**

In its motion, Madison County requests that the Court preclude Williams from presenting evidence—or even referencing—training materials or policies from Madison County's Insurance Company—Idaho Counties Risk Management Program ("ICRMP").

Madison County asserts that Federal Rule of Evidence 411 prohibits a jury from learning the existence of liability insurance, but furthermore, that the information is irrelevant.

Williams reiterates that information regarding ICRMP's policy manuals, one for "at-will" employees and one used for "for-cause" employees, is relevant not as evidence of liability insurance, but because it demonstrates that Madison County was contemplating "changes" to its employment policies and procedures.

Under Federal Rule of Evidence 411, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."

Because Williams does not seek to introduce this evidence to *prove* the County had insurance, it likely does not fall under Rule 411's preclusion.[9] Furthermore, as Rule 411 outlines, this type of evidence *is* sometimes admissible for other purposes. That said, Williams does not want to offer this evidence for any of the traditional "other purposes," but simply to show the "baseless position [Madison County] has taken on this issue." Dkt. 198, at 12.

Agreements, discussions, trainings, and information exchanged between ICRMP and Madison County are just that: discussions between an entity and its insurance carrier.

---

[9] Candidly, the introduction of this evidence would likely alert the jury to the fact that ICRMP was/is Madison County's insurance carrier, but that would be a byproduct of its introduction. This gives the Court some pause, but ultimately it is this evidence's irrelevant nature that persuades the Court to exclude it.

While the ramifications and interpretations of those decision may or may not have affected Mr. Williams, the parties need not discuss ICRMP's involvement in this case. Because the Court finds information concerning ICRMP irrelevant, it excludes it.

6. *Exclusions of the reasons for Williams' termination and the biased decision maker*

**GRANTED in PART; DENIED in PART.**

In its next motion, Madison County argues that Williams should not be allowed to discuss the reasons behind his termination or his requests for another decision maker at his disciplinary hearing. Madison County asserts that, considering the narrow scope of this trial, the information is not only irrelevant, but were the jury to get bits and pieces of the backstory or previous trial, it could lead to confusion and/or prejudice. For his part, Williams contends that the discussions he had with others helped inform his understanding of the process and the parameters of his employment and subsequent departure. He claims that he should be allowed to discuss his concerns regarding Sheriff Klingler.

The Court agrees that discussions with others may or may not have helped inform Williams of the scope and terms of his employment and may be relevant to a jury's determination of "all the circumstances surrounding the relationship." However, Williams' claim that Sheriff Klinger was a biased decision-maker is irrelevant. That issue was already decided and was not remanded for trial. There is no need to discuss that and doing so could confuse the jury and/or prejudice Madison County. Williams can testify regarding his discussions with others regarding his due process rights, a hearing with an

impartial decision maker, and how those discussions shaped his understanding of what was happening, but he need not go into details about why he was actually terminated or Sheriff Klingler's role as the biased decision maker in his case.

> 7. *Other employment law cases involving Madison County*

**GRANTED in PART; DENIED in PART.**

Here, Madison County seeks an order prohibiting Williams from referencing other employment law cases involving Madison County. The Court has recently ruled on this issue. *See Fuller v. Dep't of Corr.*, No. 1:13-CV-00035-DCN, 2019 WL 332395, at *4 (D. Idaho Jan. 25, 2019) ("this evidence (of a similar civil case) is only tangentially related to the current facts and circumstances and would unduly prejudice the jury.").

As in *Fuller*, while the substance of the other civil cases against Madison County is related to the present action, each and every case is so fact intensive that alerting a jury to these other cases could prejudice Defendants. In short, referencing other employment cases involving Madison County is outside the scope of this retrial and will not be allowed.

That said, this information *may* be admissible as impeachment evidence. As Williams points out, the other cases are matters of public record and the testimony of those witnesses was presented under oath. It would be disingenuous for Madison County's witnesses to take a position in this case that directly contradicts sworn testimony already given—barring unique factual circumstances or an accompanying explanation. The Court, however, cannot rule on the impeachment issue at this time.

Before Williams intends to introduce any such evidence for impeachment purposes, he must alert the Court and the matter will be taken up outside the presence of the jury.

 8. *Exclusion of Kimber Rick's testimony*

**GRANTED.**

Kimber Ricks was a Madison County Commissioner during the relevant time period in this matter. Ricks testified at the previous trial; however, he has since passed away. Madison County asserts that Williams should not be able to introduce his prior testimony into the record as it is neither relevant nor probative and it could be prejudicial.

The Court does not know exactly what either party may or may not want read into the record; however, the Court has reviewed the entirety of Ricks' testimony in the prior case and much of that testimony deals with Williams' right to an unbiased decision maker—a topic the Court has specifically *precluded* from this retrial—and the due process hearings near the end of Williams' employment. Madison County opines that Williams may want the following exchange between counsel for Plaintiff and Ricks from the prior trial admitted into evidence:

> Q.     Now you understand through this litigation that there—that Travis Williams has a protected property interest in the employment that he had with Madison County.
>
> A.     I understand—
>
> …
>
> Q.     And as a result of that, there are certain protections that have to be in place for purposes of protecting that right of Mr. Williams, correct?
>
> A.     I—if you say so I'm sure it is correct.

*See* Trial Transcript, Dkt. 146, at 193. Williams does not specifically say what he wants

read into the record, but responds to this specific portion of testimony by saying that it is

relevant and binding on the County and it is only prejudicial because Ricks "admitted

Williams had a property interested in his employment." Dkt. 198, at 13. The Court

disagrees.

Ricks started to answer the question asked with "I understand" but was interrupted

by an objection. While "I understand" could very well have been all Ricks wanted to say

(i.e. he was in agreement with the statement just asked of him); it could have also been a

partial response. Furthermore, "if you say so I'm sure it is correct" is not as persuasive as

Williams wants it to be. "If you say so" is little more than acquiesces to the statement, not

affirmative agreement or understanding. There is simply too much potential confusion

surrounding this short exchange—which was only a precursor for the broader line of

questioning about due process hearings and decision makers—for its limited probative

value. In fact, similar testimony is available from other witnesses.[10]

Because the bulk of Ricks' testimony is related to an issue not before the jury, the

testimony in the record is unclear, and Ricks is unavailable to testify and/or clarify, the

Court will not allow Ricks' prior testimony to be read to the jury in this case.

   *9. Evidence not disclosed*

---

[10] The "admission" here is not unique to Ricks. Other parties have explained, or eluded to, their
understanding that following the Introductory Period of employment (which was at-will), an employee
could only be fired for-cause. Both sides will have a fair opportunity to flesh this out with other
witnesses, but because the same cannot be said for Ricks, the Court will not allow his limited and vague
testimony to come in at trial.

**WITHHELD RULING.**

Finally, Madison County asserts that Williams has listed several exhibits that were never previously disclosed—specifically information related to Williams' wage and benefit information. Williams claims to have "no idea what the objection is" and that he has produced, and supplemented, all appropriate information.

In light of the opposing representations, the Court is not prepared to rule on this motion at this time. At trial, with more information and explanation, it will do so. That said, it goes without saying that information not properly disclosed is inadmissible at trial—absent substantial justification. Fed. R. Civ. P. 37(c)(1).

**V. ORDER**

The Court HEREBY ORDERS:

1. Williams' Motion in Limine (Dkt. 186) is **GRANTED in PART** and **DENIED in PART** as outlined above.

2. Madison County's Motion in Limine (Dkt. 187) is **GRANTED in PART** and **DENIED in PART** as outlined above.

DATED: August 23, 2019

David C. Nye
Chief U.S. District Court Judge